UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>LEXMARK INTERNATIONAL, INC., ET AL.<br><br>    Defendants. | Civil Action No. 1:17-cv-05543-WHP |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
(212) 326-2000

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    PLAINTIFF HAS FAILED TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION. ................................................................. 2

        A.    Defendants' Channel-Inventory-Level Statements Were Accurate. ........... 3

        B.    Defendants' Opinions Concerning the Causes of Worldwide Revenue Growth Had a Reasonable Basis and Are Not Actionable. ........ 5

        C.    Defendants Had No Duty to Make Additional Pejorative Disclosures About the Effects of Price-Harmonization Actions. .............. 6

        D.    Defendants Had No Duty to Disclose EMEA Channel Inventory Levels. ...................................................................................................... 6

        E.    Item 303 Does Not Salvage the Complaint by Supplying a Disclosure Duty. ......................................................................................... 8

    II.    PLAINTIFF'S SCIENTER ALLEGATIONS ALSO FAIL. ................................ 9

    III.    DISMISSAL SHOULD BE WITH PREJUDICE. ............................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Braskem S.A. Sec. Litig.*,
 246 F. Supp. 3d 731 (S.D.N.Y. 2017)..................................................................................4

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
 No. 12-CV-0256, 2016 WL 6652731 (S.D.N.Y. Nov. 10, 2016).............................................4

*Coronel v. Quanta Capital Holdings*,
 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009) ................................................................8

*Dekalb Cty. Employees' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*,
 No. 15-CV-1337, 2016 WL 3685089 (S.D.N.Y. July 6, 2016).................................................9

*Fadem v. Ford Motor Co.*,
 352 F. Supp. 2d 501 (S.D.N.Y. 2005)..................................................................................2

*Fait v. Regions Fin. Corp.*,
 655 F.3d 105 (2d Cir. 2011)..................................................................................2

*Freudenberg v. E\*Trade Fin. Corp.*,
 712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................4

*In re Gen. Elec. Co. Sec. Litig.*,
 857 F. Supp. 2d 367 (S.D.N.Y. 2012)..................................................................................5

*Gillis v. QRX Pharma Ltd.*,
 197 F. Supp. 3d 557 (S.D.N.Y. 2016)..................................................................................10

*In re Hardinge, Inc. Sec. Litig.*,
 696 F. Supp. 2d 309 (W.D.N.Y. 2010)..................................................................................7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
 No. 12-CV-8557, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ................................................5

*In re IAC/InterActiveCorp Sec. Litig.*,
 695 F. Supp. 2d 109 (S.D.N.Y. 2010)..................................................................................1

*IKB Int'l S.A. v. Bank of Am.*,
 No. 12-CV-4036, 2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014)............................................2

*Kowal v. MCI Commc'ns Corp.*,
 16 F.3d 1271 (D.C. Cir. 1994)..................................................................................6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lipow v. Net1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)..............................................................................................9

*In re Mylan N.V. Sec. Litig.*,
    No. 16-CV-7926, 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) .............................................7

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 Fed. App'x 10 (2d Cir. 2011)..............................................................................................6

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
    No. 16-CV-8260, 2018 WL 1444223 (S.D.N.Y. Mar. 20, 2018) .............................................7

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt., LLC*,
    595 F.3d 86 (2d Cir. 2010)........................................................................................................7

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
    No. 15-CV-5999, 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017).............................................8

*Pollio v. MF Glob., Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009)..............................................................................4, 9, 10

*Rand v. Starter Corp.*,
    No. 94-CV-5325, 1995 WL 322024 (S.D.N.Y. May 30, 1995) ...............................................6

*In re Salix Pharm., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).......................................................................4, 6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    No. 13-CV-8846, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .............................................9

## PRELIMINARY STATEMENT

Plaintiff's Opposition[1] abandons the Complaint's theory of the case, effectively conceding its failure to state a claim. As Defendants showed, the Complaint's falsity theory centers on Lexmark's EMEA region, alleging that Defendants failed to disclose that (i) Lexmark's price harmonization actions caused *EMEA* customers to buy ahead, increasing *EMEA* channel inventory; (ii) laser-supplies channel inventory for the *EMEA* region exceeded Lexmark's alleged ten-week guideline range; and (iii) Lexmark's efforts to reduce *EMEA* channel inventory were unsuccessful. (Def. Mem. 14–17.) Using the Monthly Reports the Complaint quotes, Defendants refuted this theory by showing that (i) Lexmark's challenged remarks concerning channel inventory spoke only to worldwide—not EMEA—channel inventory; (ii) worldwide channel inventory grew only slightly during the alleged class period and never exceeded ten weeks; and (iii) once Lexmark concluded that its EMEA channel inventory reduction efforts were not working, Defendants promptly disclosed this fact. (*Id.*)

Caught, Plaintiff now relinquishes the Complaint's EMEA-centric theory, warranting dismissal. *In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 117 n.2 (S.D.N.Y. 2010) (dismissing "abandoned" claims for failure to address dismissal arguments in opposition). Instead, Plaintiff advances a new notion—that Lexmark's worldwide channel inventory had somehow grown out of control, rendering the challenged statements concerning its contribution to revenue growth materially misleading. (*See* Opp. 5–6, 10–13, 16–18, 21–22.) But these

---

[1] Unless otherwise specified, (i) capitalized terms shall have the meaning ascribed to them in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint with Prejudice [Dkt. 66] ("Opening Brief," cited as "Def. Mem. __."); (ii) all quotations and citations are omitted and emphasis is added. "Reply Decl." refers to the Reply Declaration of William J. Sushon in Further Support of Defendants' Motion to Dismiss. "Opposition" means Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss [Dkt. 71] (cited as "Opp. __.").

1

allegations appear nowhere in the complaint, and Plaintiff cannot amend its Complaint through its Opposition. *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("[P]arties cannot amend their pleadings through issues raised solely in their briefs."). And even if such amendment-by-ambush were permitted, as shown below, Plaintiff's new theory is as flawed as its previous one. The Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.   PLAINTIFF HAS FAILED TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION.**

Even in its fourth attempt to explain how any of Defendants' statements were misleading, Plaintiff has failed to allege, with the stringent specificity the PSLRA requires, that any of the challenged statements were materially false or misleading. As Defendants have shown, their channel-inventory statements are "estimates" or "opinions" subject to the Supreme Court's *Omnicare* standard for pleading falsity. (Def. Mem. 10–12.) Plaintiff's sole response—unsupported by any authority—is that these statements are not "opinions" because they reflect the Company's "then-current state of affairs." (Opp. 9.) But numerous cases hold that current statements about financial metrics based on models—like Lexmark's channel inventory—are opinions. *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (assets' present-value estimate an opinion); *IKB Int'l S.A. v. Bank of Am.*, No. 12-CV-4036, 2014 WL 1377801, at *1 (S.D.N.Y. Mar. 31, 2014) (real estate appraisals opinions), *aff'd* 584 F. App'x 26 (2d Cir. 2014). And while Plaintiff contends that Defendants were informed of "exact levels" of channel inventory (Opp. 5), Plaintiff cannot dispute the Complaint's acknowledgement that the Monthly Reports were based on models representing management's best guess as to channel inventory, a fact Lexmark disclosed. (Def. Mem. 5.) Thus, Plaintiff must show that Defendants' channel-

2

inventory-related statements were either subjectively disbelieved or lacked a reasonable basis. (Def. Mem. 11.)  Plaintiff does neither.

> A.  **Defendants' Channel-Inventory-Level Statements Were Accurate.**

Plaintiff's new theory is that Defendants represented that worldwide laser-supply channel-inventory levels had "minimal impact" on year-to-year revenue growth when channel inventories had grown by as much as 45%.  (Opp. 4–6.)  This theory appears nowhere in the Complaint and so cannot be considered on this motion.  (*See* p. 1, *supra*.)  But even if it could, Plaintiff would still fail to state a claim because this new theory (i) mischaracterizes Defendants' statements and (ii) misapprehends channel inventory's contribution to revenues.

*First*, none of the "minimal impact" statements concerned channel inventory levels, but rather the channel inventory growth's contribution to revenue growth year-to-year.  (*See* Reply Decl. Ex. M.)  Plaintiff contends that these statements were misleading because channel inventory levels grew worldwide year-over-year by between 13% and 45%, and for EMEA by between 20% and 70%.  (Opp. 6.)  This simplistic apples-to-oranges comparison is misleading:

- *Plaintiff uses the wrong channel-inventory measure.*  Revenue growth is measured in dollars, not weeks.  Lexmark's estimate of weeks of channel inventory at any given time rested on numerous assumptions having nothing to do with revenue, including end-users' consumption rate. (Def. Mem. 5.)  The proper channel-inventory measure for estimating its contribution to revenue growth is dollars, not weeks, of channel inventory.

- *Plaintiff misunderstands how channel inventory contributes to revenue.*  The channel inventory growth rate is not channel inventory's estimated contribution to the revenue growth rate, but to revenue.  For example, if channel inventory at the beginning of a quarter is $10, and at the end of the quarter is $12, the $2 difference is revenue, *not* revenue *growth*.  If in the following quarter, the ending channel inventory is $14, that is again only $2 of revenue to the company ($14 ending channel inventory less $12 beginning channel inventory), even though channel inventory has grown.  So while channel inventory grew each quarter by $2, channel inventory's contribution to revenue was flat.  By contrast, if the channel inventory for the second quarter ended at $15, revenue for that quarter would be $3 ($15 ending channel inventory less $12 beginning channel inventory).  In that case, the second quarter would contribute $1 of revenue *growth*, because the second quarter's $3 of revenue is $1 more than the first quarter's $2.  Thus, only changes in channel inventory *growth rates* affect revenue growth.

- *Third*, changes in channel inventory are but one component of revenues, which also include changes in currency, pricing, consumption, and loyalty.  Dividing the dollar amount of the change in channel inventory growth rate by the prior quarter's revenue yields the contribution of channel inventory growth to revenue growth for that period.

Fundamentally, for channel inventory to contribute to revenue at all, channel inventory must be increasing, and for channel inventory to contribute to revenue *growth*, channel inventory must be increasing *at an increasing rate*.  As Reply Decl. Ex. O (drawn from the Monthly Reports and public documents) shows, Lexmark's increases in revenue due to increasing worldwide channel inventory growth rates during the class period were in fact "minimal," fluctuating from a worldwide laser supplies revenue growth contribution of -0.98% (representing shrinkage) in the second quarter of 2014 to a worldwide laser supplies revenue growth contribution of 1.15% in the first quarter of 2015, when Defendants noted that channel inventory contributed to revenue growth.  Similarly, Reply Decl. Ex. P shows that the EMEA channel inventory growth rate, while higher than that for worldwide channel inventory, consistently *declined* during the alleged class period and began contributing to revenue shrinkage beginning in the first quarter of 2015.

Plaintiff's authorities are thus inapposite because each involved contemporaneously known facts contradicting the defendants' statements.[2]  Defendants' challenged channel inventory statements here were accurate, not actionable.  *See Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009) ("[D]isclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.").

---

[2] *See Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010) (listing contemporaneous contradictory facts); *In re Braskem S.A. Sec. Litig*., 246 F. Supp. 3d 731, 759 (S.D.N.Y. 2017) (failure to disclose that defendant paid bribes); *In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *3 (S.D.N.Y. Apr. 22, 2016) (inventory problem reported to management by potential acquirer after due diligence); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256, 2016 WL 6652731, at *10 (S.D.N.Y. Nov. 10, 2016) (reserve understatement revealed by defendant's cross-check against government database).

*Second,* several of these statements were forward-looking. (*See* Reply Decl. Ex. N.) These statements not only had a reasonable basis (and turned out to be true, s*ee* Reply Decl. Ex. O), but also were accompanied by meaningful cautionary language in the Company's SEC filings and the analyst calls themselves. (*See* Reply Decl. Ex. Q.) These statements are therefore not actionable, as Defendants have shown. (Def. Mem. 12.)

>    B.   **Defendants' Opinions Concerning the Causes of Worldwide Revenue Growth Had a Reasonable Basis and Are Not Actionable.**

Given that Defendants reasonably estimated that increasing channel inventory growth rates made only small contributions to Lexmark's overall revenue growth, Defendants' related opinions that end-user demand contributed to remaining revenue growth were equally reasonable. Plaintiff's unsupported speculation that "inflated channel inventory levels" stemming from "price harmonization actions in EMEA" were "by far the larger cause of the apparent revenue increases," is just wrong. (Opp. 7.) Having offered accurate estimates of channel inventory's effect on worldwide revenue growth, Defendants had no duty to volunteer information about EMEA channel inventory. (Def. Mem. 14–15.) Indeed, Plaintiff does not dispute that worldwide channel inventory remained below Lexmark's alleged ten-week "guideline" for the entire alleged class period, and mostly below the alleged eight-week "sweet spot" (Compl. ¶ 8.). (*See* Sushon Decl. Ex. L.) Plaintiff's cases involved situations where, unlike here, defendants failed to disclose facts they knew contradicted their statements. *See In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 385, 401–02 (S.D.N.Y. 2012) (failure to disclose difficulties issuing commercial paper when CEO told Treasury Secretary "that GE was having difficulty issuing commercial paper for terms longer than overnight"); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CV-8557, 2013 WL 6233561, at *14 (S.D.N.Y. Dec. 2, 2013) (defendant touted key customer relationship after customer sent termination letter).

5

## C. Defendants Had No Duty to Make Additional Pejorative Disclosures About the Effects of Price-Harmonization Actions.

Plaintiff contends that Defendants misled investors by failing to disclose that price-harmonization "would exacerbate an already untenable channel inventory situation." (Opp. at 8.) But there was no "untenable channel-inventory situation." Worldwide channel inventory was well within Lexmark's alleged target levels during the entire class period, and increasing channel inventory growth rates were minimally contributing to revenue growth (as Defendants disclosed) (*see* pp. 3–5, *supra*). And as Reply Decl. Ex. Q shows, Defendants repeatedly disclosed price-harmonization actions. The only thing Defendants did not do was adopt Plaintiff's pejorative "untenable" adjective, something the law does not require. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994) (no obligation to adopt "a particular pejorative adjective"); *Rand v. Starter Corp.*, No. 94-CV-5325, 1995 WL 322024, at *4 (S.D.N.Y. May 30, 1995) ("Corporations are not required to characterize . . . their operations in a pejorative manner merely to cover all the bases should things turn out worse than expected.").

Neither of the cases Plaintiff cites suggests Defendants' disclosures were inadequate. The Second Circuit in *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, did not consider any warnings or adverse disclosures. 455 Fed. App'x 10 (2d Cir. 2011). And in *Salix*, the defendants' warning was a bland comment that "actual results might differ materially" from their projections. 2016 WL 1629341, at *11. Here, by contrast, Defendants disclosed the price harmonization actions and their anticipated results. (Reply Decl. Ex. Q.)

## D. Defendants Had No Duty to Disclose EMEA Channel Inventory Levels.

Notwithstanding the accuracy of Defendants' channel-inventory statements, Plaintiff contends Defendants were duty-bound to disclose EMEA channel-inventory levels because (i) EMEA laser supplies channel inventory fluctuations could "impact the entire Company's

6

financial performance"; and (ii) Defendants made statements about EMEA "laser supplies and revenue." (Opp. 12.) Neither of these arguments is availing.

That EMEA channel inventory could "impact the entire Company's" financial results proves too much. Every part of a company's operations affect its entire financial results somehow. The sole issue is whether rising EMEA channel inventories rendered Defendants' statements misleading. (Def. Mem. 13–14.) It did not, both because those statements were accurate (*see* pp. 3–5, *supra*), and worldwide channel inventories indisputably remained below Lexmark's alleged ten-week target level for the entire class period, and below the eight-week alleged "sweet spot" for the majority of it. (*See* Sushon Decl. Ex. L; Def. Mem. 15–16.)

Nor did Defendants' EMEA-specific statements give rise to a disclosure duty. As shown in Reply Decl. Ex. R, those statements all concerned EMEA laser-supplies revenue, not the reasons for changes in that revenue or channel inventory levels. They therefore implied nothing about EMEA channel-inventory levels. *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, No. 16-CV-8260, 2018 WL 1444223, at *20 (S.D.N.Y. Mar. 20, 2018) (statements about company-wide productivity not false despite undisclosed productivity decline in one region); *In re Hardinge, Inc. Sec. Litig.*, 696 F. Supp. 2d 309, 322 (W.D.N.Y. 2010). This stands in sharp contrast to Plaintiff's cases, which involved a failure to disclose facts that squarely concerned the subject defendants' statements. *See In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926, 2018 WL 1595985, at *6 (S.D.N.Y. Mar. 28, 2018) (failure to disclose product's benefit from anticompetitive arrangements in discussing reasons for its market success); *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 93 (2d Cir. 2010) (disclosure of amount of management fee insufficient without disclosing that part of fee was paid to "faithless fiduciary").

Plaintiff's reliance on a single analyst's statement regarding Lexmark's decision to draw down channel inventory (*see* Opp. 13) is unavailing. *See Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, No. 15-CV-5999, 2017 WL 4403314, at *14 (S.D.N.Y. Sept. 30, 2017) (cherry-picked analyst statement inadequate to show misleading statement). In any event, as Mr. Rooke explained, Defendants previously disclosed "an elevated level of inventory," but sell-out softened "more than expected," causing Lexmark to adjust its estimates. (*See* Sushon Decl. Ex. I at 12.) That Defendants' prior sales estimate turned out in hindsight to be wrong is not securities fraud. *See Coronel v. Quanta Capital Holdings*, 2009 WL 174656, at *27 (S.D.N.Y. Jan. 26, 2009) (estimate not unreasonable just because it turned out to be wrong).

### E. Item 303 Does Not Salvage the Complaint by Supplying a Disclosure Duty.

As Defendants showed, Item 303 did not give rise to a disclosure duty because there was no cognizable trend, and the Complaint fails to allege Defendants' knowledge of any trend or their reasonable expectation that any trend would materially adversely affect Lexmark as a whole. (Def. Mem. 18–21.) Plaintiff argues that month-to-month gyrations in EMEA channel inventory levels (*see* Sushon Decl. Ex. L) did not obscure the alleged trend of Lexmark's year-over-year increases. (Opp. 16.) But plaintiff cites no authority for this proposition, and Defendants are aware of none. In any event, to the extent there was an identifiable EMEA channel-inventory trend, it was that EMEA channel inventory growth was consistently slowing. (Reply Decl. Ex. P.)

And even if Plaintiff were correct that there were an identifiable trend of increasing EMEA channel inventories, this trend could not reasonably have been expected to materially adversely affect Lexmark as a whole. This is because, as Defendants have shown and Plaintiff does not contest, Lexmark's worldwide channel inventory always remained well below the Company's alleged ten-week target level for the entire class period. (Def. Mem. 20.)

8

In an attempt to show the adverse materiality of the alleged trend, Plaintiff points to Lexmark's announcement at the alleged class period's end that Lexmark would be attempting to draw down $50MM to $70MM in inventory. (Opp. 20.) Setting aside that this is an impermissible hindsight allegation, it fails more fundamentally because even that drawdown was not material. Given the Company's annual revenues of $3.55 billion (*see* Sushon Decl. Ex. B at 26), even a $70MM draw-down amounted to only 1.97% of a year's revenue—a quantitatively immaterial amount. *See Dekalb Cty. Employees' Ret. Sys. v. Controladora Vuela Compania De Aviacion, S.A.B. de C.V.*, No. 15-CV-1337, 2016 WL 3685089, at *4 (S.D.N.Y. July 6, 2016) (dismissing case because loss did not meet 5% threshold for quantitative materiality).

## II. PLAINTIFF'S SCIENTER ALLEGATIONS ALSO FAIL.

Plaintiff contends that the "core-operations theory" and "sheer scale" of Defendants' alleged scheme support a scienter inference. (Opp. 23–24.) But these pleading tactics cannot create the requisite "strong inference" of fraudulent intent. *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (core operations theory "does not independently establish scienter"); *Pollio*, 608 F. Supp. 2d at 574 (allegations that significant loss did not happen "overnight" insufficient); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-CV-8846, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) ("[I]t is clear that the size of the fraud alone does not create an inference of scienter."). Similarly, while Plaintiff correctly points out that a complaint need not allege a motive for fraud to plead scienter (Opp. 21), Plaintiff does not and cannot contest that Defendants bore substantial losses as a result of the July 2015 channel-inventory announcement, which undermines any scienter inference, as Defendants showed (Def. Mem. 22). This alone should defeat Plaintiff's bid to prove fraudulent intent.

That leaves all Plaintiff's scienter eggs in the monthly CEO-report basket. (Opp. 21–23.) But these reports fully support Defendants' challenged statements because (i) worldwide channel

9

inventory levels indisputably never exceeded Lexmark's alleged ten-week target; and (ii) read properly, the reports substantiate all Defendants' statements about channel-inventory, its contribution to revenue growth, and end-user demand. Thus, far from supplying a strong fraudulent-intent inference, these reports corroborate that Defendants spoke to investors with complete candor. *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 602 (S.D.N.Y. 2016) (no scienter inference where plaintiff failed to allege data contradicted defendants' statements).[3]

### III.   DISMISSAL SHOULD BE WITH PREJUDICE.

The Complaint is the third attempt to state a claim in this action, and the Court warned Plaintiff that dismissal would be with prejudice. (Def. Mem. 23.) Plaintiff nevertheless made only a token effort to defend the Complaint's EMEA channel-inventory-centric theory. Plaintiff instead concocted a new—equally flawed—theory and begged permission (without a formal motion) to submit yet another amended complaint, a *fourth* attempt to state a claim. (*See* Opp. 5–6, n. 4.) This request should be denied. Plaintiff does not dispute that it used the Monthly Reports Defendants submitted as Exhibits J and L to draft the Complaint. Indeed, the Complaint throughout draws numbers directly from those reports. (*See, e.g.,* SAC ¶¶ 12, 55, 60, 77, 99, 102, 113.) Having had every opportunity to use those reports in drafting the Complaint, if Plaintiff wanted to advance its current, flawed, theory, it could have done so. It did not.

In any event, as shown above, Plaintiff's new theory likewise fails, because the Monthly Reports completely support Defendants' challenged statements. Any amendment would therefore be futile. *Pollio*, 608 F. Supp. 2d at 573 (disallowing amendment because new allegations "do not remotely suffice" to save the suit). Dismissal should be with prejudice.

---

[3] Because Plaintiff fails to state a claim for a primary violation, its control-person claims should also be dismissed. (Def. Mem. 23.)

Dated: May 25, 2018
      New York, New York

Respectfully submitted,

/s/ *William J. Sushon*
_____
Stuart Sarnoff
William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
(212) 326-2000

*Attorneys for Defendants*