UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

OKLAHOMA FIREFIGHTERS PENSION      :     Civil Action No. 1:17-cv-05543-WHP
AND RETIREMENT SYSTEM, Individually :
and on Behalf of All Others Similarly Situated, :     <u>CLASS ACTION</u>
                                    :
                 Plaintiff,         :     LEAD PLAINTIFF'S MEMORANDUM OF
                                    :     LAW IN SUPPORT OF UNOPPOSED
    vs.                             :     MOTION FOR PRELIMINARY APPROVAL
                                    :     OF SETTLEMENT
LEXMARK INTERNATIONAL, INC.,        :
PAUL A. ROOKE, DAVID REEDER, and    :
GARY STROMQUIST,                    :
                                    :
                 Defendants.        :
                                    :
——————————————————— x

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    SUMMARY OF THE ACTION ............................................................................3

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............................6

      A.     Terms of the Settlement .................................................................................6

      B.     The Standards for Preliminary Approval of a Proposed Settlement......................8

      C.     The Settlement Satisfies the Rule 23(e)(2) Factors ..........................................9

              1.     Plaintiff and Plaintiff's Counsel Have Adequately Represented the Class ...................................................................................................9

              2.     The Proposed Settlement Was Negotiated at Arm's Length ...................11

              3.     The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ...............................................................11

              4.     The Proposed Method for Distributing Relief Is Effective......................14

              5.     Attorneys' Fees and Expenses ...................................................................14

              6.     The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion .........................................15

              7.     Class Members Are Treated Equitably .....................................................15

      D.     The Settlement Also Meets the Remaining *Grinnell* Factors ...............................16

              1.     The Stage of the Proceedings....................................................................16

              2.     The Risks of Maintaining the Class Action Through Trial......................17

              3.     The Ability of Defendants to Withstand a Greater Judgment...................17

              4.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................18

IV.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE ............................................................................19

V.    CERTIFICATION OF THE CLASS IS APPROPRIATE .................................22

VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................25

**Page**

VII.   CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000)..................................................................................24

*Barlow v. United States,*
   145 Fed. Cl. 228 (2019) ....................................................................................22

*Billhofer v. Flamel Techs., S.A.,*
   281 F.R.D. 150 (S.D.N.Y. 2012) ..................................................................23, 25

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
   310 F.R.D. 69 (S.D.N.Y. 2015) ........................................................................24

*Christine Asia Co. v. Yun Ma,*
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) ..................................................................................12

*City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs., Inc.,*
   No. 1:17-cv-02207-LMM, slip op.
   (N.D. Ga. Mar. 24, 2020)..................................................................................22

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001)................................................................................17

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)..................................................................2, 9, 12, 16

*Dover v. British Airways, PLC (UK),*
   No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513
   (E.D.N.Y. Oct. 9, 2018).....................................................................................11

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................17

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
   301 F.R.D. 116 (S.D.N.Y. 2014) .......................................................................10

*Guevoura Fund Ltd. v. Sillerman,*
   No. 1:15-cv-07192-CM, 2019 WL 6889901
   (S.D.N.Y. Dec. 18, 2019)...................................................................................11

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
   298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................16, 23

**Page**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987) ................................................................18

*In re Time Warner, Inc. Sec. and ERISA Litig.*,
    No. 02 Civ. 5575(SWK), 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006) ......................................................................................18

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ......................................................................24

*In re BHP Billiton Limited Sec. Litig.*,
    No. 1:16-cv-01445-NRB, slip op.
    (S.D.N.Y. Apr. 10, 2019) ....................................................................................15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
    (S.D.N.Y. Nov. 8, 2010) .............................................................................10, 12

*In re Genworth Fin., Inc. Sec. Litig.*,
    No. 1:14-cv-02392-AKH, slip op.
    (S.D.N.Y. Nov. 16, 2017) ..................................................................................15

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510, 2007 WL 1191048
    (E.D.N.Y. Apr. 19, 2007) ....................................................................................20

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................16, 18

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676
    (S.D.N.Y. Sept. 29, 2003) ..................................................................................18

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    No. CV 01-3285 (JBW)(MDG), 2005 WL 3046686
    (E.D.N.Y. Nov. 15, 2005) ..................................................................................20

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    No. 02 MDL 1484(JFK), 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007) ......................................................................................19

**Page**

*In re PaineWebber Ltd. P'ships Litig.*,
   147 F.3d 132 (2d Cir. 1998)..........................................................................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996),
   *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996)...........................................................................................20

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962(RCC), 2006 WL 3498590
   (S.D.N.Y. Dec. 4, 2006)..............................................................................................20

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
   No. 1:18-cv-01620-VM, slip op.
   (S.D.N.Y. Mar. 24, 2020)...........................................................................................22

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   No. 15cv1249, 2017 WL 2062985
   (S.D.N.Y. May 15, 2017).............................................................................................24

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514
   (E.D.N.Y. Oct. 23, 2012).............................................................................................18

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................23

*Isolde v. Trinity Indus., Inc.*,
   No. 3:15-cv-02093-K, slip op.
   (N.D. Tex. Mar. 24, 2020)..........................................................................................22

*Martin v. Sysco Corp.*,
   No. 1:16-cv-00990-DAD-SAB, 2019 WL 6894471
   (E.D. Cal. Dec. 18, 2019)............................................................................................22

*Milburn v. PetSmart, Inc.*,
   No. 1:18-cv-00535-DAD-SKO, 2019 WL 5566313
   (E.D. Cal. Oct. 29, 2019)............................................................................................22

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807
   (S.D.N.Y. Mar. 8, 2019) ..............................................................................................11

Page

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)..........................................................................18

*Villella v. Chem. & Mining Co. of Chile Inc.*,
333 F.R.D. 39 (S.D.N.Y. 2019) ......................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...............................................................................8

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)..............................................................................20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b) ...............................................................................................................3
§78t(a) ...............................................................................................................3
§78u-4 .................................................................................................3, 20, 21
§78u-4(a)(4) ..............................................................................................3, 7, 15
§78u-4(a)(7) ......................................................................................................3
§78u-4(a)(7)(A)-(F) ........................................................................................21

Federal Rule of Civil Procedure
Rule 23.................................................................................................2, 20, 22
Rule 23(a)...........................................................................................2, 9, 23
Rule 26(a)(1).......................................................................................................4
Rule 23(a)(2).....................................................................................................23
Rule 23(b).............................................................................................................9
Rule 23(b)(3)..............................................................................................2, 23, 24
Rule 23(e)...........................................................................................................8, 23
Rule 23(e)(1).................................................................................1, 2, 8, 22
Rule 23(e)(2)..............................................................................................2, 8, 9
Rule 23(e)(2)(A)...............................................................................................9
Rule 23(e)(2)(C)(i)..........................................................................................12
Rule 23(e)(2)(C)(ii).........................................................................................14
Rule 23(e)(2)(C)(iii)........................................................................................14
Rule 23(e)(2)(C)(iv)........................................................................................15
Rule 23(e)(2)(D)...............................................................................................15
Rule 23(e)(3).......................................................................................................9

**Page**

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*,
  NERA Economic Consulting (Feb. 12, 2020) ........................................................................19

Lead Plaintiff District No. 9, I.A. of M. & A.W. Pension Trust ("District No. 9" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement between Plaintiff, on behalf of the Class, as defined below, and defendants Lexmark International, Inc. ("Lexmark" or "Company"), and Paul A. Rooke, David Reeder, and Gary Stromquist (collectively with Lexmark, "Defendants"); (ii) approval of the form and manner of the settlement notice to Class Members; (iii) certification of the Class for settlement purposes; and (iv) the scheduling of a hearing on final approval of the Settlement and related matters ("Settlement Hearing"). The requested relief is embodied in the Settling Parties' (defined below) agreed-upon form of [Proposed] Order Preliminarily Approving Settlement Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class ("Preliminary Approval Order") and exhibits thereto.

## I.      INTRODUCTION

Plaintiff, on behalf of the Class, and Defendants (together, the "Settling Parties") have reached an agreement to resolve this securities class action for $12,000,000.00 in cash, inclusive of attorneys' fees and expenses ("Settlement Amount"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated May 8, 2020 ("Stipulation") and filed simultaneously herewith.[1]

The Settling Parties reached this Settlement after more than two years of litigation and extensive, arm's-length negotiations. The Settlement is a very good result in light of the costs and risks of further litigation. It represents a substantial, immediate recovery for the Class – purchasers of Lexmark common stock during the Class Period, August 1, 2014 through July 20, 2015, inclusive, and who were damaged thereby. Moreover, the Settlement was reached by counsel with

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

a thorough understanding of the strengths and weaknesses of the case after an extensive investigation, which included interviewing former Lexmark employees as well as the review of internal Company documents and engagement of an expert on issues such as market efficiency, loss causation, and damages.  The Settling Parties ultimately negotiated the Settlement with the assistance of an experienced and neutral third-party mediator, Michelle Yoshida of Phillips ADR, following extensive arm's-length negotiations.

The Settlement satisfies Rule 23(e)(1) for the issuance of notice, including each of the Rule 23(e)(2) factors and the Second Circuit's factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).[2]   Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Plaintiff requests that this Court enter the Settling Parties' agreed-upon Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which will:

1.    Preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.    Find that the Class satisfies each of the elements of Rule 23(a) and (b)(3) and therefore should be certified for settlement purposes;

3.    Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation;

4.    Find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil

---

[2]    Citations, internal quotations, and footnotes omitted unless otherwise noted.

Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

5.     Set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice, requesting exclusion from the Class, objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees, charges, and expenses, including Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4), submitting papers in support of final approval of the Settlement, and the Settlement Hearing.

## II.     SUMMARY OF THE ACTION

The initial complaint was filed by plaintiff Oklahoma Firefighters Pension and Retirement System on July 20, 2017.  After competing motions for appointment of lead plaintiff and selection of lead counsel were filed, the Court appointed District No. 9 as Lead Plaintiff on October 11, 2017, and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On November 28, 2017, Plaintiff filed its Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), which alleged violations of Sections 10(b) and 20(a) of the Exchange Act.  In addition to Defendants, the Amended Complaint named Martin S. Canning as an individual defendant.  He was later voluntarily dismissed.

Consistent with the Court's Individual Practices, after Plaintiff filed the Amended Complaint, Defendants sent a letter to the Court on December 8, 2017 requesting a pre-motion conference for a motion to dismiss and presenting arguments supporting dismissal.  ECF No. 49. After Plaintiff responded to the letter on December 15, 2017 (ECF No. 53), counsel for the parties appeared before the Court on December 18, 2017, and on that same day, the Court established a schedule for the filing of a second amended complaint and briefing on Defendants' anticipated

- 3 -

motion to dismiss.  ECF No. 55.

On February 15, 2018, Plaintiff filed the Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"), which added detailed allegations about Defendants' alleged knowledge of Lexmark's inflated laser supplies inventory levels based on their participation in monthly "CEO Calls."  ECF No. 63.  On April 2, 2018, Defendants moved to dismiss the Complaint, supported by a detailed memorandum of law and a supporting declaration with several exhibits, including internal Company documents.  ECF Nos. 65-67.  On May 14, 2018, Plaintiff submitted a comprehensive memorandum of law in opposition to Defendants' motion to dismiss (ECF No. 71), and Defendants submitted their reply memorandum in further support of their motion to dismiss on May 25, 2018, which was also supported by a declaration with additional exhibits.  ECF Nos. 73-74.  On March 19, 2019, the Court denied Defendants' motion to dismiss.  ECF No. 78.  Defendants answered the Complaint on May 2, 2019, denying Plaintiff's allegations and asserting several defenses.  ECF No. 86.

Following denial of Defendants' motion to dismiss, the parties engaged in document and written discovery.  On May 13, 2019, Plaintiff served Defendants with Plaintiff's first requests for production of documents, which included 46 separate document requests, and on June 14, 2019, Plaintiff served Defendants with 24 requests for admission.  On June 18, 2019, the parties exchanged their respective initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.  On July 10, 2019, Defendants served their first request for production of documents on Plaintiff, and on October 9, 2019, Defendants served Plaintiff with 15 interrogatories.  During this time, Plaintiff also issued document subpoenas to numerous third parties, including Lexmark's outside auditor and various investment firms and securities analysts that covered Lexmark during the Class Period.

- 4 -

Discovery between the parties resulted in multiple meet and confers concerning, among other things, confidentiality, the parties' electronically stored information ("ESI") protocol, search terms and document custodians, as well as the scope and breadth of the parties' respective document requests.  By the time the parties agreed to settle the Litigation, Plaintiff had produced thousands of pages of documents concerning its trading in Lexmark stock, including investment statements and trading records, investment policies and guidelines, and materials received from Plaintiff's outside investment managers and investment consultant.  Defendants also produced more than 12,000 pages of documents, which included, among other materials, copies of Lexmark Board of Directors meeting minutes and each of the "CEO Call" presentations leading up to and during the Class Period.  Plaintiff also obtained more than 6,200 documents from third parties, totaling more than 45,000 pages.

On August 16, 2019, Plaintiff moved for class certification, and its motion was accompanied by a detailed memorandum of law as well as an expert report on market efficiency prepared by Professor Steven P. Feinstein, Ph.D., C.F.A.  ECF Nos. 98-100.  In connection with the motion for class certification, Plaintiff produced more than 4,000 pages of documents to Defendants on which Professor Feinstein relied.

In the course of the Litigation, and while the parties were engaged in document and written discovery, the parties agreed to engage the services of Michelle Yoshida of Phillips ADR, a nationally recognized mediator with extensive experience in the mediation of complex securities fraud class actions.  Following the simultaneous exchange of detailed mediation statements, as well as the subsequent simultaneous exchange of reply mediation statements, and pre-mediation conferences with Ms. Yoshida, the parties attended mediation with Ms. Yoshida on September 11, 2019.  The parties, however, were unable to resolve the Litigation at the mediation.

As prosecution of the Litigation and discovery continued, the parties subsequently resumed their efforts to explore the potential for settlement through additional discussions with Ms. Yoshida. On January 28, 2020, the Settling Parties informed the Court that with the assistance of Ms. Yoshida they had agreed to settle all claims asserted in the Litigation.  ECF No. 113.  The Settling Parties are pleased to present the Stipulation, dated May 8, 2020, to the Court for preliminary approval.

## III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Terms of the Settlement

The Settlement resolves all Released Claims of the Class against Defendants.   The Stipulation provides that Lexmark shall cause its insurers to pay the entire $12 million Settlement Amount on behalf of all Defendants within 21 days of the entry of the Preliminary Approval Order. Lexmark and/or its insurers will transfer the Settlement Amount to the Clerk of the Court with instructions to deposit it in the Court Registry Investment System, which will serve as the Escrow Agent.  Stipulation, ¶2.1.  The Settlement Amount, plus accrued interest, comprises the Settlement Fund.  The cost of settlement administration, including the costs of notice to the Class, as well as Taxes and Tax Expenses, will be funded by the Settlement Fund.  Stipulation, ¶¶2.1, 2.8.  Plaintiff proposes a nationally recognized class action settlement administrator, A.B. Data, Ltd., to be retained here subject to the Court's approval.   The proposed notice plan and plan for claims processing is discussed below in Section IV and in the accompanying Declaration of Eric A. Nordskog of A.B. Data, Ltd. Regarding Notice and Claims Administration ("Nordskog Decl.").

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation, respectively) to all Class Members who can be identified with reasonable effort.  Nordskog Decl., ¶¶4-9.  Additionally, the Claims Administrator will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once

in *The Wall Street Journal* and once over a national newswire service.  *See* Stipulation, Ex. A, ¶14; Nordskog Decl., ¶10.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants.  Stipulation, ¶5.9.  The Notice also advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees, charges, and expenses, and Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class; (ii) the procedures for requesting exclusion from the Class or objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees, charges, and expenses, and/or Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4); and (iii) the date and time for the Settlement Hearing.

The recovery to individual Class Members will be determined pursuant to the Plan of Allocation, included in the Notice, and will depend on several variables, including: (i) the aggregate value of the Recognized Claims represented by all valid and acceptable Proof of Claim forms; (ii) when Class Member's shares were purchased or acquired and the price at the time of purchase; (iii) any principal amounts received by the Class Member; and (iv) whether the shares were sold, and if so, when they were sold and for how much.  *See* Stipulation, Ex. A-1 at 7-12. The Plan of Allocation treats all Class Members equitably based on the timing of their Lexmark stock purchases, acquisitions, and sales.  *Id.*

The Settling Parties have entered into a Supplemental Agreement which provides that Lexmark shall have the option to terminate the Settlement in the event that valid requests for exclusion from the Class exceed certain criteria.  Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants concerning, based on, arising out of, or in connection with both: (i) the purchase or acquisition of Lexmark common stock during the Class Period; and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions that were or could have been alleged or asserted in the Litigation.  Stipulation, ¶1.26.

The proposed Settlement is a very good result for the Class and provides a significant cash recovery now without the risks and delays of further litigation.

### B.     The Standards for Preliminary Approval of a Proposed Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged.  *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context"); *see also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) (same) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Pursuant to Rule 23(e)(1), as amended, the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(2) provides:

> (2)     Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)     the class representatives and class counsel have adequately represented the class;
> >
> > (B)     the proposal was negotiated at arm's length;
> >
> > (C)     the relief provided for the class is adequate, taking into account:

          (i)       the costs, risks, and delay of trial and appeal;

          (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

          (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

          (iv)    any agreement required to be identified under Rule 23(e)(3); and

      (D)     the proposal treats class members equitably relative to each other.

These factors largely overlap with the Second Circuit's *Grinnell* factors, which include the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. As discussed below, the proposed Settlement for $12 million in cash satisfies each of the factors identified under Rule 23(e)(2), as well as each of the Second Circuit's *Grinnell* factors. In addition, each of the Rule 23(a) and (b) factors are met for certification of a class for settlement purposes. Accordingly, Notice of the proposed Settlement should be sent to the Class.

**C.**     **The Settlement Satisfies the Rule 23(e)(2) Factors**

      **1.**     **Plaintiff and Plaintiff's Counsel Have Adequately Represented the Class**

Plaintiff and Plaintiff's counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on behalf of Plaintiff and the Class, including, among other things, investigating the relevant factual events, drafting an amended complaint and the operative complaint, successfully opposing Defendants' motion to dismiss through substantial briefing and engaging in oral argument thereon, engaging in document and written discovery,

obtaining, reviewing, and analyzing over 50,000 pages of documents produced by Defendants and third parties, moving for class certification supported by an expert declaration on the issue of market efficiency, and engaging in a full-day mediation session with Ms. Yoshida, preceded by detailed mediation submissions exchanged between the parties.  Moreover, Plaintiff's counsel has achieved a significant all-cash Settlement of $12 million which will provide immediate relief to the Class.

Lead Counsel has substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country.  *See, e.g.*, *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135 (S.D.N.Y. 2014) ("The Court finds that Robbins Geller, the firm acting as counsel to Plaintiffs, is experienced in securities class action litigation and qualified to conduct this lawsuit" and "Robbins Geller has previously been deemed qualified in similar litigation."); *see also* www.rgrdlaw.com.  Lead Counsel worked collaboratively with additional counsel, Labaton Sucharow, LLP, which also has extensive experience litigating securities class actions.  Moreover, court-appointed Lead Plaintiff, District No. 9, oversees the investment of more than $600 million in assets.  ECF No. 100-1, ¶12.  The collective tenacity of Plaintiff's counsel and the sophistication of Lead Plaintiff contributed to the $12 million Settlement, which will provide significant and immediate relief to the Class.

Bringing this experience and knowledge to bear, Lead Counsel believes that the Settlement is in the best interests of the Class.  Courts recognize that counsel's judgment is entitled to significant weight.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("Moreover, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying

- 10 -

litigation."); *see also Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing "great weight is accorded to counsel's recommendation" if the proposed settlement is reached by experienced counsel after arm's-length negotiations).

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations conducted through a neutral, third-party mediator with Defendants represented by highly sophisticated counsel. At no point did Defendants concede that a single aspect of Plaintiff's claims was meritorious. The negotiations that ultimately led to the Settlement did not happen overnight. Rather, they occurred during a vigorous and adversarial mediation session on September 11, 2019, supported by comprehensive mediation submissions. The mediation was unsuccessful and discovery continued. Ultimately, the parties re-engaged Ms. Yoshida, and after several additional rounds of discussions, reached an agreement to settle. In fact, the Settlement was only reached after a "mediator's recommendation" using a double-blind protocol that was ultimately accepted by the Settling Parties.

The mediation process provides compelling evidence that the Settlement is not the product of collusion between the parties. *See Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *10-*11 (E.D.N.Y. Oct. 9, 2018) (the parties' participation in mediation is evidence of arm's-length negotiations); *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807, at *6, *13-*14 (S.D.N.Y. Mar. 8, 2019) (same). Thus, Plaintiff has established that the Settlement was negotiated at arm's length.

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits afforded to the Class – including the immediacy and certainty of a recovery – against the significant costs, risks, and delay

of proceeding with this Litigation.  *See* Rule 23(e)(2)(C)(i).  This factor overlaps with the first (the complexity, expense, and likely duration of the litigation) and fourth (the risks of establishing liability and damages) *Grinnell* factors.

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages that are difficult for plaintiffs to meet.  *See, e.g.*, *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *Flag Telecom*, 2010 WL 4537550, at *15 (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

This case is a prime example of the complexity and risks of securities class actions.  Plaintiff advanced numerous complex legal and factual issues under the federal securities laws.  For instance, Plaintiff alleges that during the Class Period Lexmark depended heavily on the sale of laser printer supplies and that Defendants misrepresented and omitted certain material facts, including, *inter alia*, a significant rise in channel inventory levels in the Company's Europe, Middle East, and Asia ("EMEA") regions.  *See, e.g.*, ECF No. 63, ¶12.  Plaintiff also alleges that Defendants knew that the channel inventory levels had outpaced demand and would need to be drawn down, which would adversely impact the Company's financial performance.  *Id.*, ¶16.

While Plaintiff believes its claims would be borne out by the evidence presented at trial, it recognizes that there are significant hurdles to proving liability or even proceeding to trial.  Among other things, Defendants have strenuously contended that Plaintiff would be unable to prove that Defendants made any false statements with scienter (whether under a theory of corporate scienter or otherwise).  Indeed, Defendants maintain that they accurately disclosed all material information about laser supplies channel inventory and demand, and that any increase in channel inventory levels was

- 12 -

timely addressed and appropriately disclosed by the Company.  Defendants also maintain that they

lack scienter because, while channel inventory levels may have fluctuated in certain regions,

worldwide channel inventory levels never exceeded the Company's tolerance levels, which, if proven,

would support Defendants' argument that they did not receive undisclosed information contradicting

the alleged misstatements and omissions.  Defendants also contested whether they had a legal

obligation under the federal securities laws to disclose the additional information Plaintiff contends

was not disclosed.  Additional discovery would have been time consuming and expensive for all

parties given that many of the key witnesses and documents were located throughout Europe.

Plaintiff also faced risks in establishing loss causation and damages.  Defendants undoubtedly

would have argued that Plaintiff's damages methodology is unreliable and does not accurately

account for the effect that confounding factors or market factors had on the stock price.  Defendants

would have further argued that damages, if any, are zero or, at best, significantly less than Plaintiff

had estimated.  For example, Defendants were likely to attack the length of the Class Period, arguing

that (if it could be certified at all) it should be significantly shortened, which would have significantly

reduced potential damages.  As with contested liability issues, issues relating to loss causation and

damages would have likely come down to an unpredictable and hotly disputed "battle of the experts."

Further, Plaintiff's case was particularly susceptible to a danger inherent in reliance on

expert witness testimony, namely that the experts will be subject to a *Daubert* challenge.  If, for

some reason, the Court determined that even one of Plaintiff's experts should be excluded from

testifying at trial, Plaintiff's case would become much more difficult to prove.

Accordingly, in the absence of a settlement, there was a very real risk that the Class would

have recovered an amount significantly less than the total Settlement Amount – or nothing at all.

Thus, the $12 million recovery now, particularly when viewed in the context of the risks, costs,

delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 4.      The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Nordskog Decl., ¶¶4-10.  In addition, a settlement-specific website will be created where settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *Id.*, ¶11.

Plaintiff proposes a thorough and comprehensive claims administration process, as explained in the Nordskog Decl., ¶¶4-12.  It starts with a standard claim form which requests the information necessary to calculate a claimant's recognized loss amount pursuant to the Plan of Allocation.  The Claims Administrator will process the claims, calculate claimants' recognized losses pursuant to the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.  The Plan of Allocation was prepared with information provided by Plaintiff's damages consultant and is based primarily on an analysis estimating the amount of artificial inflation in the price of Lexmark common stock during the Class Period.

### 5.      Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The proposed Preliminary Approval Order provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses 35 days prior to the Settlement Hearing. *See* Preliminary Approval Order, ¶27.  As stated in the proposed Notice, Lead Counsel intends to seek an award of attorneys' fees in an amount up to 25% of the Settlement

- 14 -

Amount and litigation expenses in an amount not to exceed $300,000, plus interest on these amounts at the same rate as earned by the Settlement Fund.  In addition, Plaintiff may seek an award of no more than $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.  This fee request is in line with other settlements recently approved in this District.  *See, e.g.*, *In re BHP Billiton Limited Sec. Litig.*, No. 1:16-cv-01445-NRB, slip op. (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery, plus expenses); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, slip op. (S.D.N.Y. Nov. 16, 2017) (awarding 30% of $20 million recovery, plus expenses).  With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel as ordered by the Court.  Stipulation, ¶6.2.

### 6.  The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement.  The parties have entered into a standard supplemental agreement which provides that in the event Class Members with Class Period purchases of Lexmark common stock that exceed a certain percentage of all Lexmark shares purchased during the Class Period validly request exclusion from the Class, Lexmark shall have the option to terminate the Settlement.  *See* Stipulation, ¶7.3.

### 7.  Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, based on the timing of their Lexmark common stock purchases, acquisitions, and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.

- 15 -

D.       **The Settlement Also Meets the Remaining *Grinnell* Factors**[3]

1.       **The Stage of the Proceedings**

Plaintiff's and Lead Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is certainly adequate to support the Settlement.  This knowledge is based, in part, on the extensive investigation undertaken by Lead Counsel in preparing the Complaint, which included speaking with numerous former employees of Lexmark, and reviewing the Company's SEC filings and other public statements.  The resultant accumulation of information permitted Plaintiff and Lead Counsel to allege specific facts regarding the exact levels of Lexmark's monthly EMEA laser supplies channel inventory levels and to also include allegations regarding Defendants' knowledge of those levels, which Plaintiff alleges were discussed during monthly CEO Calls.  Once the motion to dismiss was denied, the parties engaged in document and written discovery, and Plaintiff obtained documentary evidence regarding the CEO Calls during and leading up to the Class Period.  As a result of the extensive investigation and the targeted discovery conducted on issues at the heart of the Complaint's allegations, Plaintiff and Lead Counsel were in position to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants and Ms. Yoshida.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to

---

[3]     With respect to the second *Grinnell* factor (the reaction of the class), the Notice regarding the Settlement has not yet been mailed or otherwise distributed.  In the event any objections are received after the Notice is disseminated, they will be addressed by Lead Counsel in connection with Plaintiff's motion for final approval of the Settlement and in its reply in further support thereof.

recommend the Settlement").

Indeed, prior to mediation, the parties simultaneously exchanged detailed mediation submissions and reply submissions in which they vigorously laid out the strengths of their positions and attacked each other's potential weaknesses.  The parties also separately participated in pre-mediation calls with Ms. Yoshida where they were encouraged to candidly discuss the strengths and weaknesses of their claims and defenses.  During mediation, the parties thoroughly discussed and vetted the facts and law, as Ms. Yoshida engaged in a critical analysis of the parties' arguments.

This factor strongly supports preliminary approval of the Settlement.

### 2.      The Risks of Maintaining the Class Action Through Trial

At the time of Settlement, Plaintiff had moved for class certification, but the time for Defendants to oppose Plaintiff's motion had not yet passed.  The fact that the Class was not yet certified presented yet another risk to Plaintiff and the proposed Class.  For example, Defendants were likely to argue that Plaintiff could not prove price impact and that if the Class could be certified at all, the Class Period should be significantly shortened.  In fact, even assuming class certification was achieved, the Court could have revisited certification at any time, and if at all possible, Defendants were sure to move to decertify the Class before trial or on appeal – presenting a continuous risk that the case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 3.      The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  While Defendants here are able to withstand a

judgment in excess of the Settlement Amount, courts generally do not find this to be an impediment to settlement when the other factors favor the settlement.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement").

### 4. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment years down the road.  *See In re Time Warner, Inc. Sec. and ERISA Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

- 18 -

Nevertheless, the Settlement here represents a very good result, falling in a range of approximately 10% to 38% of estimated recoverable damages.  It is approximately 10% of $116.8 million, which is Plaintiff's estimated damages consistent with its proposed Plan of Allocation.  However, had Defendants successfully reduced the length of the Class Period to April 28, 2015 through July 20, 2015, as they were likely to argue, the Settlement would represent 25% of estimated recoverable damages of $48.2 million.  And, if Defendants were successful in reducing it still further to June 16, 2015 through July 20, 2015, the Settlement would represent 38% of estimated recoverable damages of $31.5 million.  Under any of these scenarios, the Settlement falls well within the range of reasonableness and supports preliminary approval.  Indeed, these percentages are many multiples of the 2.1% median percentage recovery to investor losses in securities class actions in 2019.  *See* https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_Trends_012120_Final.pdf (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, at 20, fig. 13, NERA Economic Consulting (Feb. 12, 2020)).

## IV.  THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules; rather, the court should look to its reasonableness.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007).  "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  *Id*.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim to all Class Members who can be identified

with reasonable effort.  Stipulation, Ex. A, ¶13.  This includes mailing to all those Class Members identified by Lexmark's transfer agent and to brokers and other nominees who purchased Lexmark shares on behalf of others.  In addition, the Claims Administrator will publish the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  *Id.*, ¶14.

Notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause, Rule 23, and the PSLRA in a multitude of cases.  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *11 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and to "more than 2500 of the largest banks, brokerages, and other nominees"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, No. CV 01-3285 (JBW)(MDG), 2005 WL 3046686, at *2 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of mailing and summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

In addition, the proposed form of notice comports with the requirements of due process, the PSLRA, and Rule 23, and is the same or similar to the form(s) of notice routinely approved by courts in this jurisdiction.  The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962(RCC), 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "fairly apprise the prospective members of the

class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings") (alteration in original).

The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court.  *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA.  It advises recipients that they have the right to request to be excluded from the Class or to object to any aspect of the Settlement, the Plan of Allocation, or Lead Counsel's fee and expense application. The Notice also provides recipients with the contact information for the Claims Administrator, A.B. Data, Ltd., and Lead Counsel.  The information is provided in a format that is accessible to the reader and is in the same or similar format that has been approved by this and many other courts in this jurisdiction, which also supports its approval.

Finally, as of the date of this motion, the operations of the Southern District of New York are significantly curtailed in response to the COVID-19 pandemic, and it is unclear when normal operations will resume.  Under these exigent and uncertain circumstances, and in light of the Court's Emergency Individual Rules and Practices in Light of COVID-19 (¶1.A), Plaintiff believes

- 21 -

that the Settlement Hearing may need to be conducted telephonically to ensure the health and

safety of the Court, the parties and their counsel, and Class Members eligible to participate in the

Settlement Hearing, all while avoiding potentially significant and uncertain delay.

Accordingly, the proposed Notice informs Class Members that, due to the evolving situation

concerning COVID-19, the Court may decide to hold the Settlement Hearing telephonically.[4]

Recently and in response to the ongoing COVID-19 pandemic, multiple courts have converted final

approval hearings for class action settlements into telephonic final approval hearings.[5]

## V.   CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the

---

[4]   Courts have permitted telephonic final approval hearings and concluded that this form of hearing comports with the requirements of Rule 23.  *See, e.g.*, *Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-SAB, 2019 WL 6894471, at *3 (E.D. Cal. Dec. 18, 2019); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 WL 5566313, at *3 (E.D. Cal. Oct. 29, 2019); *Barlow v. United States*, 145 Fed. Cl. 228, 232-33 (2019).

[5]   *See, e.g.*, *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 1:18-cv-01620-VM, slip op. (S.D.N.Y. Mar. 24, 2020) (ECF No. 48) (ordering final settlement hearing to take place telephonically because of COVID-19); *City of Sunrise Gen. Emps.' Ret. Plan v. Fleetcor Techs., Inc.*, No. 1:17-cv-02207-LMM, slip op. (N.D. Ga. Mar. 24, 2020) (ECF No. 104) (granting unopposed motion to conduct final settlement hearing, at the date and time previously scheduled, by telephone "in light of the conditions resulting from the COVID-19 pandemic" and instructing lead counsel to publish "prominent notice" of the change "on the home page of the settlement website" and to personally notify any objectors); *Macy v. GC Svcs. Ltd. P'ship*, No. 3:15-cv-00819-DJH-CHL (W.D. Ky. Mar. 24, 2020) (ECF Nos. 88, 89) (converting final fairness hearing to a telephonic hearing where parties expressed concern over "the risks posed by the coronavirus" and directing counsel to post notice of the change from in-person to telephonic hearing, as well as a copy of the court's order, on the website associated with the class action settlement); *Isolde v. Trinity Indus., Inc.*, No. 3:15-cv-02093-K, slip op. (N.D. Tex. Mar. 24, 2020) (ECF No. 174) (ordering final settlement hearing to be conducted by telephone in light of the conditions resulting from the COVID-19 pandemic, and ordering additional notice on the settlement website, the websites of lead counsel, and for lead counsel to personally notify any "belatedly received" objectors); *In re McKesson Corp. Derivative Litig.*, No. 4:17-cv-01850-CW, Communication from Court (N.D. Cal. Mar. 19, 2020) (ordering that final settlement hearing in shareholder derivative litigation should go forward as scheduled, but be conducted by teleconference); *In re Akorn, Inc. Data Integrity Sec. Litig.*, No. 1:18-cv-01713, Minute Entry, (N.D. Ill. Mar. 12, 2020) (ECF Nos. 183, 187) (converting final approval hearing to telephonic hearing because of COVID-19 and "the interest of public health," granting final approval and holding that "class members received adequate notice as required by Rule 23(e)(1)").

Settlement only, to the certification of the Class.  The Class is defined as:

> All persons and entities who purchased or otherwise acquired Lexmark common stock between August 1, 2014 and July 20, 2015, inclusive, and were allegedly damaged thereby.  Excluded from the Class are Defendants, the officers and directors of Lexmark at all relevant times, members of their immediate families, any entity in which any Defendant owns a greater than 50% equity interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.  Also excluded from the Class are any Persons who timely and validly request exclusion from the Class as ordered by the Court.[6]

Stipulation, ¶1.4.

The proposed Class satisfies the requirements of Federal Rule of Civil Procedure 23(a), (b)(3), and 23(e), and should be certified for settlement purposes only.  In addition, Plaintiff should be appointed as the Class representative, and Lead Counsel should be appointed as Class counsel.

First, given that Lexmark had more than 61 million shares of common stock outstanding during the Class Period, as well as more than 400 institutional investors that owned Lexmark common stock and more than 1,600 holders of record of Lexmark common stock, the Class easily consists of more than 40 members and numerosity is satisfied.  *See* ECF No. 99 at 8; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

Second, because the Class' claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class.  *See* ECF No. 99 at 9-10; *see also Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("[c]ommon questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *Advanced Battery Techs.*, 298 F.R.D. at 181 ("Securities-fraud cases generally meet Rule 23(a)(2)'s commonality

---

[6]   The Class definition for purposes of the Settlement is substantially similar to the Class definition in Plaintiff's motion for class certification.  *See* ECF No. 98.

requirement.").  The facts here raise common questions as to whether: (1) Defendants violated the Exchange Act; (2) Defendants' statements misrepresented or omitted material facts; (3) Defendants acted knowingly or recklessly; and (4) investors suffered damages as a result of the alleged misconduct.  These common questions readily establish commonality.  *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (finding commonality satisfied in a securities case that raised similar common questions as raised here).

Third, Plaintiff's claims are typical of the Class' because they share the same factual and legal underpinnings.  *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement").

Fourth, Plaintiff is an adequate class representative because it has no interests "antagonistic" to those of the proposed Class, and there is no doubt that its counsel is "qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Plaintiff, like all Class Members, purchased Lexmark common stock at market prices during the Class Period and alleges that it was injured by the same material misrepresentations and omissions and subsequent stock price decline that injured all Class Members.  *See* ECF No. 99 at 11-13.  Plaintiff has "actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution."  *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual adjudications.  ECF No. 99 at 14-15, 24.  Indeed, because the elements of Plaintiff's claims, such as falsity, scienter, reliance, economic loss, and loss causation, all present common questions of law and fact that predominate over individualized ones, courts within this District recognize that

- 24 -

the predominance requirement is "readily met in certain cases alleging . . . securities fraud." *Billhofer*, 281 F.R.D. at 158 (alteration in original).  Superiority is also readily met because adjudicating individual claims would be a significant waste of judicial resources, Plaintiff is unaware of any other related litigation commenced by purchasers of Lexmark common stock during the Class Period, and there are no management difficulties that will preclude this action from being maintained as class action for settlement purposes.  *See* ECF No. 99 at 24.

Accordingly, class certification is appropriate here for Settlement purposes.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully submit the procedural schedule attached hereto as Appendix A for the Court's review.

## VII.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; (iii) certification of the Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  May 8, 2020                              Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
                                                SAMUEL H. RUDMAN
                                                DAVID A. ROSENFELD


                                                _____
                                                        *s/ David A. Rosenfeld*
                                                     DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
ROBERT J. ROBBINS
MAUREEN E. MUELLER
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
mmueller@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tpintar@rgrdlaw.com

*Lead Counsel for Plaintiff*

LABATON SUCHAROW, LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel*

- 26 -

**APPENDIX A**

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim ("Notice Date") | 14 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 7 calendar days after the Notice Date |
| Posting and filing of Plaintiff's motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, and an award to Plaintiff | 35 calendar days before the Settlement Hearing |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for filing Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Plaintiff's reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses, and an award to Plaintiff | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on May 8, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ David A. Rosenfeld

DAVID A. ROSENFELD