UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

OKLAHOMA FIREFIGHTERS PENSION    :
AND RETIREMENT SYSTEM, Individually   :
and on Behalf of All Others Similarly Situated, :
                                 :
                 Plaintiff,   :
                                 :
   vs.   :
                                 :
LEXMARK INTERNATIONAL, INC.,   :
PAUL A. ROOKE, DAVID REEDER, and   :
GARY STROMQUIST,   :
                                 :
            Defendants.   :
                                 :

———————————————————— x

Civil Action No. 1:17-cv-05543-WHP

<u>CLASS ACTION</u>

STIPULATION AND AGREEMENT OF
SETTLEMENT

This Stipulation and Agreement of Settlement dated as of May 8, 2020 (the "Stipulation"), is made and entered into by and among: (i) District No. 9, I.A. of M & A.W. Pension Trust (on behalf of itself and each of the Class Members), by and through its counsel of record in the Litigation (as defined herein); and (ii) Defendants Lexmark International, Inc. ("Lexmark" or the "Company"), and Paul A. Rooke, David Reeder, and Gary Stromquist (the "Individual Defendants," and collectively, with Lexmark, the "Defendants"), by and through their counsel of record in the Litigation.  The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.      THE LITIGATION

The initial complaint in this case, entitled *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., et al.*, No. 1:17-cv-05543-WHP, was filed in the United States District Court for the Southern District of New York (the "Court") on July 20, 2017.  On October 11, 2017, the Court appointed District No. 9, I.A. of M & A.W. Pension Trust as Lead Plaintiff.  On November 28, 2017, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws. [1]

On February 15, 2018, Lead Plaintiff filed the Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") and alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  The named defendants in the Complaint are Lexmark and the Individual Defendants.  The Complaint alleges the Defendants violated the Exchange Act by making materially false or misleading statements and omissions of

---

[1] Like the initial complaint, the amended complaint named Martin S. Canning as a defendant.  With the Court's approval, Mr. Canning was voluntarily dismissed from the Litigation on December 4, 2017.  ECF No. 45.

material fact in U.S. Securities and Exchange Commission filings, press releases, earnings calls, and investor conferences regarding Lexmark's laser printer supplies business, including demand and the amount of Lexmark's "channel inventory."   The Complaint further alleges that Defendants' alleged misrepresentations and omissions artificially inflated the price of Lexmark common stock.  The Complaint alleges that on July 21, 2015, Lexmark revealed a decline in laser printer supplies revenue stemming from the need to reduce elevated channel inventory, and that this disclosure removed the artificial inflation from the price of Lexmark common stock, which declined in response to the Company's disclosures.

On April 2, 2018, Defendants moved to dismiss the Complaint.  Following briefing and oral argument on Defendants' motion to dismiss, on March 19, 2019, the Court denied Defendants' motion to dismiss.  On May 2, 2019, Defendants filed their Answer and Defenses to the Complaint. ECF No. 86.  Defendants denied, and continue to deny, each and all of the Complaint's allegations of fraud or intentional misconduct.  Defendants contend they are not liable for any alleged false or misleading statements and that all information required to be disclosed by the federal securities laws was so disclosed.  Defendants also contend that their actions did not cause Lead Plaintiff's alleged loss, and that they did not act with scienter.

On May 28, 2019, the parties submitted a Joint Rule 26(f) Report and [Proposed] Discovery Plan.  ECF No. 89.  On June 4, 2019, the parties appeared before the Court for the Initial Case Management Conference.  Following the conference, the parties submitted a revised Joint Pretrial Schedule on June 6, 2019 (ECF No. 90), which the Court adopted on June 10, 2019.  ECF No. 91.

The parties engaged in fact and class-related discovery involving Lead Plaintiff, Defendants, and several third parties, resulting in the production and review of more than 50,000 pages of documents.  On August 16, 2019, Lead Plaintiff filed its motion for class certification and

supporting memorandum of law.  ECF Nos. 98–100.  Defendants' time to respond to the motion for class certification has not elapsed, and the motion remains pending before the Court.

During the course of the Litigation, the parties engaged a nationally recognized, experienced, and neutral third-party mediator, Michelle Yoshida of Phillips ADR, and held direct settlement discussions.  The parties exchanged detailed mediation submissions and Lead Counsel and additional counsel met in person with the mediator and counsel for Defendants on September 11, 2019, but were unable to reach an agreement.  Accordingly, the parties submitted a Revised Joint Pretrial Schedule, which the Court adopted on October 2, 2019.  ECF No. 102.  The parties continued to engage in document and written discovery, including negotiating the appropriate scope of document productions, search terms, and custodians.

On January 8, 2020, the Parties informed the Court that they had resumed their mediation with the assistance of Michelle Yoshida, and respectfully requested a stay of all deadlines to allow the Parties to focus on settlement, conserve resources, and promote judicial economy.  ECF No. 111.  The Court granted the Parties' request on January 14, 2020.  ECF No. 112.

Following several rounds of negotiations aided by the mediator, the Parties reached an agreement to settle the Litigation for $12 million in cash, inclusive of attorneys' fees and expenses, award to the Lead Plaintiff, and administrative and other settlement costs, subject to the negotiation of the terms of a Stipulation and approval by the Court.  On January 28, 2020, the Parties notified the Court that they had reached an agreement to settle all claims asserted in the Litigation, and respectfully requested that all case deadlines remain stayed.  ECF No. 113.  The Court granted the parties' request on January 30, 2020.  ECF No. 114.

## II.     LEAD PLAINTIFF'S CLAIMS AND THE BENEFIT OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports those claims.  However, Lead Plaintiff and its counsel

recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and its counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and its counsel also are mindful of the inherent problems of proof under, and possible defenses to, the alleged securities law violations asserted in the Litigation. Lead Plaintiff and its counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiff and its counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiff and the Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiff and the Class in the Litigation. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied and continue to deny, among other allegations, the allegations that the Lead Plaintiff or the Class have suffered any damage, that the price of Lexmark common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that the Lead Plaintiff or the Class were harmed by the conduct alleged in the Litigation or that could have been alleged as part of the Litigation. Defendants believe that the evidence developed to date shows that they acted properly at all times and that the Litigation is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in

the manner and upon the terms and conditions set forth in this Stipulation.  Defendants also have

taken into account the uncertainty and risks inherent in any litigation, especially in complex cases

such as this Litigation.  Defendants have, therefore, determined that it is desirable and beneficial

to them that the Litigation be settled in the manner and upon the terms and conditions set forth in

this Stipulation.

## IV.      TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among

Lead Plaintiff (for itself and the Class Members) and Defendants, by and through their respective

counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the

Released Claims shall be finally and fully compromised, settled, and released, and the Litigation

shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and

conditions of the Stipulation, as follows.

### 1.      Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1      "Authorized Claimant" means any Class Member whose claim for recovery has

been allowed pursuant to the terms of the Stipulation.

1.2      "Claim(s)" means a paper claim submitted on a Proof of Claim or an electronic

claim that is submitted to the Claims Administrator.

1.3      "Claims Administrator" means the firm of A.B. Data, Ltd.

1.4      "Class" means, for purposes of this Settlement only, all those who purchased or

otherwise acquired Lexmark common stock between August 1, 2014 and July 20, 2015, inclusive,

and were allegedly damaged thereby.  Excluded from the Class are Defendants, the officers and

directors of Lexmark at all relevant times, members of their immediate families, any entity in

which any Defendant owns a greater than 50% equity interest, and the legal representatives, heirs,

successors-in-interest or assigns of any such excluded party.  Also excluded from the Class are any Persons who timely and validly request exclusion from the Class as ordered by the Court.

1.5    "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶1.4 above.

1.6    "Class Period" means the period from August 1, 2014 to July 20, 2015, inclusive.

1.7    "Class Representative" means Lead Plaintiff.

1.8    "Defendants" means Lexmark and the Individual Defendants.

1.9    "Defendants' Counsel" means the law firm of O'Melveny & Myers LLP.

1.10    "Effective Date," or the date upon which this Settlement becomes "effective," means the date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.11    "Escrow Agent" means the Court Registry Investment System ("CRIS").

1.12    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the time in which to appeal the Judgment has passed without any appeal having been taken; and (iii) if a motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with

approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of Lead Plaintiff's counsel's attorneys' fees and expenses, payments to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with its representation of the Class, the Plan of Allocation of the Net Settlement Fund, as hereinafter defined, or the procedures for determining Authorized Claimants' recognized claims.

1.13   "Individual Defendants" means Paul A. Rooke, David Reeder, and Gary Stromquist.

1.14   "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Settling Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

1.15   "Lead Counsel" means the law firm of Robbins Geller Rudman & Dowd LLP and any of its members, partners, associates and/or employees.

1.16   "Lead Plaintiff" means District No. 9, I.A. of M & A.W. Pension Trust.

1.17   "Lexmark" means Lexmark International, Inc.

1.18   "Litigation" means the action captioned *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., et al.*, No. 1:17-cv-05543-WHP (S.D.N.Y.).

1.19   "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, costs, expenses, and interest and any award to Lead Plaintiff, provided for herein or approved by the Court and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

1.20    "Notice and Administration Expenses" means costs and expenses actually incurred in connection with providing notice to the Class, locating Class Members, soliciting claims, assisting with the submission of claims, processing Proofs of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

1.21    "Person" means an individual, corporation (and all its divisions and subsidiaries thereof), partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.22    "Plaintiffs' Counsel" means Lead Counsel, additional counsel Labaton Sucharow LLP, and any attorney or firm who has appeared in the Litigation on behalf of any of the Plaintiffs or the Class.

1.23    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.24    "Proof of Claim" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

1.25    "Related Parties" means each of the Defendants' respective present and former parents, subsidiaries, divisions and affiliates and the respective present and former employees, members, partners, principals, officers, directors, attorneys, advisors, accountants, agents, auditors, and insurers of each of them; and the predecessors, successors, estates, heirs, executors,

trusts, trustees, administrators, agents, representatives and assigns of each of them, in their capacity as such.

1.26    "Released Claims" means any and all claims, demands, rights, causes of action or liabilities of every nature and description whatsoever (including Unknown Plaintiffs' Claims as set forth below), that could have been asserted in any forum, whether foreign or domestic, whether based on or arising under federal, state, local, or foreign statutory or common law, rule or regulation, whether fixed or contingent, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, based on, arising from or relating to:  (i) the purchase or acquisition of the common stock of Lexmark from August 1, 2014 to July 20, 2015, inclusive; and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in this Litigation, or that could have been alleged in this Litigation.  Released Claims does not include claims to enforce the Settlement.

1.27    "Released Persons" means each and all of the Defendants and their Related Parties.

1.28    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.29    "Settlement Amount" means Twelve Million Dollars ($12,000,000.00) in cash to be paid by wire transfer or check sent by overnight mail to the Clerk of the Court pursuant to ¶2.1 of this Stipulation.

1.30    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.31    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.32    "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Class.

1.33    "Supplemental Agreement" means the Supplemental Agreement dated May 8, 2020 between Lead Plaintiff and Defendants.

1.34    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.35    "Unknown Plaintiffs' Claims" means any Released Claims that Lead Plaintiff or any Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision with respect to this Settlement, including, without limitation, any decision not to object to this Settlement or seek exclusion from the Class.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Lead Plaintiff

and Class Members may hereafter discover facts in addition to or different from those that he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiff acknowledges, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

1.36   "Unknown Defendants' Claims" means claims referenced in ¶4.4 below that Defendants do not know or suspect to exist in his, her, or its favor at the time of the release of Lead Plaintiff, Class Members, and Lead Plaintiff's counsel which, if known by him, her, or it, might have affected his, her or its settlement with and release of Lead Plaintiff, Class Members, and Lead Plaintiff's counsel.  With respect to any and all such claims, the Settling Parties stipulate and agree that, upon the Effective Date, Defendants shall expressly waive the provisions, rights, and benefits of California Civil Code § 1542, quoted above, as well as any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  Defendants may hereafter discover facts in addition to or different from those that he, she, or it now knows or believes to be true with respect to the subject matter of the claims referenced in ¶4.4 below, but

Defendants shall expressly release any and all such claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

### 2.    The Settlement

#### a.    The Settlement Amount

2.1    Lexmark shall cause its insurers, on behalf of all Defendants, to pay the Settlement Amount of $12,000,000.00 by wire transfer or check sent by overnight mail in accordance with instructions to be provided by the Clerk of the Court within twenty-one (21) calendar days of the entry of an order granting preliminary settlement approval.  The Settlement Amount shall be paid by means of check(s) or money order(s) made out to the Clerk of the Court, with a cover letter identifying Lexmark International, Inc. as a Defendant in this Litigation, setting forth the title and civil action number of this Litigation, and the name of the Court, and specifying that payment is made pursuant to the order preliminarily approving the Settlement.  The Clerk of the Court shall deposit the funds into an interest bearing account with the CRIS.  These funds, together with any interest and income earned thereon shall constitute the Settlement Fund.  In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk of the Court is directed, without further order of this Court, to deduct from the income earned on the money in the Settlement Fund a fee equal to ten percent of the income earned on the money in the Settlement Fund.  Such fee shall not exceed that authorized by the Judicial Conference of the United States.  The Clerk of the Court shall provide to Lead Counsel the monthly statement of interest earned by the Settlement Fund.  The Settlement Fund shall be

held by the CRIS until further order of the Court, except that prior to the time the Court enters the Judgment, $250,000 may be drawn upon the CRIS account to pay Notice and Administration Expenses.  If the entire Settlement Amount is not timely paid to the Clerk of the Court, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount has not been transferred to the Clerk of the Court within ten (10) calendar days after Lead Counsel provides such written notice.

2.2     The obligations incurred pursuant to this Stipulation shall be in full and final disposition and settlement of all Released Claims.  The Settlement Amount paid by Lexmark's insurers on behalf of the Defendants is the sole monetary responsibility under this Stipulation, and Class Members who do not timely seek to exclude themselves from the Class shall not look to any of the Defendants or their respective Released Persons for satisfaction of any and all Released Claims.  The Defendants are not responsible for payment of Notice and Administration Expenses as defined below, or any out-of-pocket expenses, other than out of the Settlement Amount, as provided herein.

### b.     The Escrow Agent

2.3     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect

to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.4    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court.

2.5    Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.6    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

2.7    It shall be Lead Counsel's responsibility to disseminate the Notice, Proof of Claim, and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court. The Released Persons shall not bear any cost or have any responsibility for class notice, administration, or the allocation of the Net Settlement Fund among Authorized Claimants.  Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

**c.    Taxes**

2.8    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.8, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in

compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.   Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in ¶2.8(a) hereof) shall be consistent with this ¶2.8 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.8(c) hereof.  The Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

(c)     All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.8 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.8) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons, the parties hereto, and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Further,

Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.8.

> ### d.   Termination of Settlement

2.9     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.7 and 2.8 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' Counsel in accordance with ¶7.4 herein.

### 3.   Preliminary Approval Order and Settlement Hearing

3.1     Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the

general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing and notice that the Settlement Hearing may be conducted telephonically.

3.2     Lead Counsel shall request that after notice is given, the Court hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application and Lead Plaintiff's request for an award pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with its representation of the Class.

**4.     Releases**

4.1     Upon the Effective Date, Lead Plaintiff shall, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim or shares in the Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.

4.2     The Proof of Claim to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3     Upon the Effective Date, all Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

4.4     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, each and all of the Class Members, and Lead Counsel from all claims

- 17 -

and causes of action of every nature and description (including Unknown Defendants' Claims) whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants, except for claims relating to the enforcement of the Settlement.

**5.      Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

5.1      The Claims Administrator, subject to such supervision and direction of Lead Counsel, and as may be necessary or as circumstances may require, the Court, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2      The Settlement Fund shall be applied as follows:

(a)      to pay all Notice and Administration Expenses;

(b)      to pay the Taxes and Tax Expenses described in ¶2.8 hereof;

(c)      to pay attorneys' fees and expenses of Lead Counsel (the "Fee and Expense Award"), and to pay Lead Plaintiff an award pursuant to 15 U.S.C. § 78u-4(a)(4), if and to the extent allowed by the Court; and

(d)      after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3      After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

5.4      Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required

to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified therein.  Any Person who files a Proof of Claim shall reasonably cooperate with the Claims Administrator, including by promptly responding to any inquiry made by the Claims Administrator.

5.5     All Members of the Class (except Persons who request exclusion) shall be bound by all determinations and judgments in the Litigation concerning the Settlement, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Class, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release form or any similar document, any distribution from the Settlement Fund or the Net Settlement Fund.

5.6     Lead Counsel shall cause to be provided to Defendants' Counsel copies of all Requests for Exclusion, and any written revocation of Requests for Exclusion, as expeditiously as possible and in any event no later than fourteen (14) days prior to the Settlement Hearing.

5.7     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person

shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, or any Class Member by reason of the exercise or non-exercise of such discretion.

5.8     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants, who cash their initial distribution payment and who would receive a distribution of at least $10.00, in an equitable and economic fashion.  Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated to the New York Bar Foundation.

5.9     This Settlement is not a claims made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to Defendants or their insurers.  Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No person shall have any claim of any kind against the Defendants or their Related Parties with respect to the matters set forth in ¶¶5.1–5.8 hereof; and the Class Members, Lead Plaintiff, and Lead Counsel release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.10    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, their Related Parties, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  This does not include any claim by any party for breach of this Stipulation.

5.11    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

### 6.    Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1    Lead Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Application").  In addition, Lead Plaintiff may request an award in connection with its representation of the Class pursuant to 15 U.S.C. § 78u-4(a)(4).  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2    Lead Counsel shall propose a schedule for the payment of the fees and expenses, as awarded by the Court ("Fee and Expense Award"), with its motion for an award of attorneys' fees and expenses.  The Fee and Expense Award shall be paid to Lead Counsel from the Settlement

Fund, as ordered by the Court.  Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3     In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiffs' Counsel who received any portion of the Fee and Expense Award shall be obligated, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  Each such Plaintiffs' Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are each jointly and severally liable and responsible for any required repayment.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by counsel for the Lead Plaintiff for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal

from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including, without limitation, the releases contained herein).

6.5     Any attorneys' fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Plaintiffs' Counsel or Lead Plaintiff.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof, substantially in the form set forth in Exhibit A attached hereto;

(b)     the Settlement Amount has been deposited into the CRIS;

(c)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto;

(d)     Lexmark has not exercised its option to terminate the Stipulation pursuant to ¶7.3 hereof; and

(e)     the Judgment has become Final, as defined in ¶1.12 hereof.

7.2     Upon the Effective Date, any and all remaining interest or right of the Defendants or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the releases herein shall be effective.  If the conditions specified in ¶7.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

- 23 -

7.3     Only Lexmark possesses the option to terminate the Settlement in the event that valid requests for exclusion from the Class exceed the criteria set forth in the Supplemental Agreement, executed between Lead Plaintiff and Lexmark through their respective counsel concurrently with this Agreement.   The terms of the Supplemental Agreement shall not be disclosed in any other manner other than the statements herein and in the Notice, or as otherwise provided in the Supplemental Agreement unless and until the Court otherwise directs or a dispute arises between Lead Plaintiff and Defendants concerning its interpretation or application.   If submission of the Supplemental Agreement to the Court is required for resolution of a dispute or is otherwise ordered by the Court, the parties will undertake to have the Court review the Supplemental Agreement *in camera* without filing it on the docket.   If the Court requires that the Supplemental Agreement be filed, the parties shall request that it be filed under seal or with the percentage redacted.

7.4     Unless otherwise ordered by the Court, in the event the Stipulation is not approved or this Stipulation is terminated, canceled, or the Effective Date otherwise fails to occur, within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less Taxes, Tax Expenses, and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.1 and 2.8 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.1 and 2.8 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' Counsel.

7.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of January 28, 2020.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1–1.36, 2.6–2.9, 6.3–6.5, 7.4–7.6, and 9.5–9.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to any of Plaintiffs' Counsel or expenses to the Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.6     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor any of its counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.1 or 2.8.  In addition, any expenses already incurred pursuant to ¶¶2.1 or 2.8 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.9 and 7.4 hereof.

7.7     Defendants warrant and represent that they are not "insolvent" within the meaning of 11 U.S.C. § 101(32) as of the time the Stipulation is executed and will not be as of the time the payments of the Settlement Amount are actually transferred or made as reflected in the Stipulation. This representation is made by Defendants and not by Defendants' Counsel.  In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the

transfer of the Settlement Fund, or any portion thereof, by or on behalf of Defendants to be a voidable preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code (Bankruptcy), or applicable state law, and any portion thereof is required to be refunded and such amount is not promptly deposited in the Settlement Fund by or on behalf of any Defendants, then, at the election of Lead Plaintiff the Settlement may be terminated and the Judgment entered in favor of Defendants pursuant to the Settlement shall be null and void. Alternatively, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of the Defendants and that the Defendants and Lead Plaintiff and the Members of the Class shall be restored to their litigation positions as of January 28, 2020 and the Settlement Fund shall be promptly returned.

### 8. Bar Order

8.1     If the Settlement embodied in this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form annexed hereto as Exhibit B which shall, among other things, contain a provision providing for a Complete Bar Order in the Action, as follows: Upon the Effective Date, any and all Persons are permanently barred and enjoined, to the fullest extent permitted by law, from commencing, prosecuting, or asserting any and all claims for contribution or indemnity (or any other claim where the alleged injury to that Person is that Person's actual or threatened liability to the Class or a Class Member in the Action), arising out of, based upon, relating to, concerning, or in connection with the Released Claims, against each and every one of the Released Persons, whether arising under state, federal, local, common, or foreign law, as claims, cross-claims, counterclaims, or third-party claims, in the Action or any separate action, in this Court or in any other court, arbitration proceeding, administrative proceeding, or other forum; and the Released Persons are permanently barred and enjoined, to the fullest extent permitted by law, from

commencing, prosecuting, or asserting any and all claims for contribution or indemnity (or any other claim where the alleged injury to the Released Person is that Released Person's actual or threatened liability to the Class or a Class Member in the Action) arising out of, based upon, relating to, concerning, or in connection with the Released Claims, against any Person other than a Person whose liability to the Settlement Class has been extinguished pursuant to the Settlement and Judgment, whether arising under state, federal, local, common, or foreign law, as claims, cross-claims, counterclaims, or third-party claims, in the Action or any separate action, in this Court or in any other court, arbitration proceeding, administrative proceeding, or other forum; provided, however, that nothing herein shall release or alter the contractual rights, if any, under the terms of any bylaws or other written agreement between the Individual Defendants, on the one hand, and Lexmark, on the other.  Notwithstanding the foregoing, nothing herein shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation, the Settlement, or the Judgment.

### 9.      Miscellaneous Provisions

9.1      The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2      The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that

was reached voluntarily after consultation with competent legal counsel and with the assistance of a neutral third-party mediator, Michelle Yoshida.

9.3     Lead Plaintiff and Plaintiffs' Counsel and Defendants and Defendants' Counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defense, and resolution of the Litigation, and shall not otherwise suggest that the Settlement embodied in this Stipulation constitutes an admission of any claim or defense alleged. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.4     Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.   The Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.6     Whether or not this Stipulation is approved by the Court and whether or not the Settlement embodied in this Stipulation is consummated, the parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings had in connection with this Stipulation confidential. Notwithstanding the foregoing, the parties agree that this Stipulation may be filed publicly as part of any motion for preliminary or final approval of the Settlement.

9.7     All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto or other document incorporated by reference herein, the terms of this Stipulation shall prevail.

9.8     This Stipulation, along with its Exhibits, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.9     Defendants shall determine the form of notice to be provided for the purpose of satisfying the requirements of the Class Action Fairness Act and will identify those who will receive notice as provided for therein.  Defendants shall be responsible for mailing such notice within the time provided for in 28 U.S.C. § 1715(b) and for all expenses and costs related thereto.

9.10     The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation or a waiver by any party other than the waiving party.

9.11     The Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any

party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein or in a separate written agreement, each party shall bear its own costs.

9.12    Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class that they deem appropriate.

9.13    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.14    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or pdf'd via e-mail shall be deemed originals.

9.15    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

9.16    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and matters related to the Settlement.  Any such actions, motions, or disputes arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in this Court.

9.17    Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

9.18    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles.  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between all parties and that all parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

Dated:  May 8, 2020

ROBBINS GELLER RUDMAN
   & DOWD LLP
JACK REISE
ROBERT J. ROBBINS
MAUREEN E. MUELLER
BAILIE L. HEIKKINEN

_____
ROBERT J. ROBBINS

120 Each Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
mmueller@rgrdlaw.com
bheikkinen@rgrdlaw.com

- 31 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

LABATON SUCHAROW, LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel*

Dated:  May 8, 2020

O'MELVENY & MYERS LLP
STUART SARNOFF
WILLIAM SUSHON
WILLIAM POLLAK
GERARD SAVARESSE

WILLIAM SUSHON

7 Times Square
New York, NY  10036
Telephone:  212/326-2000
212/326-2061 (fax)
ssarnoff@omm.com
wsushon@omm.com
wpollak@omm.com
gsavaresse@omm.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on May 8, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ David A. Rosenfeld
DAVID A. ROSENFELD
