UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
OKLAHOMA FIREFIGHTERS PENSION
AND RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly Situated,

                              Plaintiff,

          vs.

LEXMARK INTERNATIONAL, INC., PAUL
A. ROOKE, DAVID REEDER and GARY
STROMQUIST,

                              Defendants.
———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:17-cv-05543-WHP

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN
OF ALLOCATION

4841-3751-6750.v4

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...........................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

III.   LEAD PLAINTIFF PROVIDED NOTICE TO THE CLASS IN COMPLIANCE
       WITH RULE 23 AND DUE PROCESS .............................................................................4

IV.    THE SETTLEMENT WARRANTS THIS COURT'S FINAL APPROVAL....................5

       A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ...........8

       B.    The Settlement Negotiations Were Conducted at Arm's Length and with
             an Experienced Mediator .....................................................................................10

       C.    The Settlement Is Adequate Considering the Costs, Risks, and Delay of
             Trial and Appeal ..................................................................................................11

             1.    Risks of Establishing Liability and Damages ...........................................12

             2.    The Risks of Maintaining the Class Action Through Trial.......................14

             3.    Defendants' Ability to Withstand a Greater Judgment.............................14

             4.    The Settlement Falls Within the Range of Reasonableness in Light
                   of the Best Possible Recovery and Risks of Litigation.............................15

       D.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors............................17

             1.    The Proposed Method for Distributing Relief Is Effective.......................17

             2.    Attorneys' Fees and Expenses Are Reasonable.........................................17

             3.    The Parties Have No Other Agreements Besides a Standard
                   Agreement Regarding Requests for Exclusion ..........................................18

             4.    Class Members Are Treated Equitably and the Reaction of the
                   Class Supports Final Approval .................................................................18

V.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................19

VI.    CERTIFICATION OF THE CLASS REMAINS WARRANTED ...................................20

VII.   CONCLUSION................................................................................................................21

- i -

# TABLE OF AUTHORITIES

Page

**CASES**

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................9

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
(S.D.N.Y. Oct. 16, 2019) ......................................................................................12

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
(S.D.N.Y. May 9, 2014),
*aff'd sub nom.*, *Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ........................................................................10, 19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................................................................................14

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) .............................................................................7

*Dover v. British Airways, PLC (UK)*,
No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513
(E.D.N.Y. Oct. 9, 2018) ........................................................................................11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)................................................................................................4

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) .................................................................................17

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................................9

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................14

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ......................................................................................14

4841-3751-6750.v4

**Page**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...............................................................5, 13, 19

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd*, 818 F.2d 145 (2d Cir. 1987) .....................................................................15

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000),
   *aff'd sub nom.*, *D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .....................................................................................8

*In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...............................................................8, 16

*In re Canadian Superior Sec. Litig.*,
   No. 09 Civ. 10087(SAS), 2011 WL 5830110
   (S.D.N.Y. Nov. 16, 2011) ......................................................................................16

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. 12-2389, 2015 WL 6971424
   (S.D.N.Y. Nov. 9, 2015) ........................................................................................15

*In re FLAG Telecom Holdings*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
   (S.D.N.Y. Nov. 8, 2010) ..................................................................................12, 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ.-8557 (CM), 2014 WL 7323417
   (S.D.N.Y. Dec. 19, 2014).....................................................................................8, 11

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .........................................................................8, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689(SAS), 2003 WL 22244676
   (S.D.N.Y. Sept. 29, 2003).......................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ...........................................................................11

- iii -

Page

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................5

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...................................................................15

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ..................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 WL 4115809
   (S.D.N.Y. Nov. 7, 2007) .............................................................................18, 20

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   No. 15cv1249, 2018 WL 6333657
   (S.D.N.Y. Dec. 4, 2018) ........................................................................ *passim*

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) .....................................................................13

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...............................................................19

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807
   (S.D.N.Y. Mar. 8, 2019) ...................................................................................10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..............................................................................15

*Pennsylvania Public School Emps.' Ret. Sys. v. Bank of Am. Corp.*,
   318 F.R.D. 19 (S.D.N.Y. 2016) .........................................................................18

*Strougo ex rel. Braz. Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...............................................................13

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 WL 1087261
   (S.D.N.Y. May 14, 2004) ..................................................................................10

Page

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   333 F.R.D. 39 (S.D.N.Y. 2019) .................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................4, 5, 11, 15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4 ..............................................................................................4, 8
   §78u-4(a)(4) ......................................................................................3, 8

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................4
   Rule 23(a)..........................................................................................20
   Rule 23(b)(3).....................................................................................20
   Rule 23(c)............................................................................................4
   Rule 23(c)(2)(B).............................................................................4, 5
   Rule 23(e)........................................................................................1, 4
   Rule 23(e)(1)......................................................................................2
   Rule 23(e)(2)(A)............................................................................8, 10
   Rule 23(e)(2)(B)...........................................................................10, 11
   Rule 23(e)(2)(C)(i).......................................................................11, 16
   Rule 23(e)(2)(C)(ii)-(iv)....................................................................17
   Rule 23(e)(2) ............................................................................ *passim*
   Rule 23(e)(2)(C)(iv)..........................................................................18
   Rule 23(e)(2)(D).........................................................................17, 18
   Rule 23(e)(3)...............................................................................6, 7, 18

## SECONDARY AUTHORITIES

Janeen McIntosh & Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation*: *2019 Full-Year Review*,
   NERA Economic Consulting (Feb. 12, 2020) ........................................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff District No. 9, I.A. of M & A.W. Pension Trust ("District No. 9" or "Lead Plaintiff"), on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion for final approval of the $12,000,000 all-cash Settlement (the "Settlement Amount") and approval of the Plan of Allocation.[1]

## I.   PRELIMINARY STATEMENT

In accordance with the terms of the Stipulation, on July 9, 2020, Defendants completed payment of $12,000,000 in cash into the Court Registry Investment System.  This proposed Settlement is a very good recovery for the Class and satisfies each of the Rule 23(e)(2) and *Grinnell*[2] factors.  It is particularly beneficial to the Class in light of the many risks Lead Plaintiff faced, including that: (1) the Court could deny Lead Plaintiff's motion to certify the Class; (2) Defendants could prevail at summary judgment at the conclusion of discovery; and (3) protracted and expensive continued litigation, including trial and likely appeals, could ultimately lead to a much smaller recovery or no recovery at all.

The Settlement is the result of hard-fought litigation among sophisticated parties and experienced counsel, and follows an extensive, arm's-length, mediation overseen by experienced mediator Michelle Yoshida, Esq. of Phillips ADR.  The Settlement was reached by counsel with a keen understanding of the merits of the claims.  Document discovery, including the collection of over 55,000 pages of documents obtained from Defendants and certain third parties, was ongoing. Lead Plaintiff had filed its motion for class certification together with the expert declaration of Dr. Steven Feinstein in support thereof.  Moreover, the mediation included the exchange of detailed

---

[1]     All capitalized terms not defined herein have the meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation") dated May 8, 2020.  ECF No. 122.

[2]     *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

mediation statements, a full-day mediation session, and subsequent negotiations through Ms. Yoshida that culminated in a mediator's proposal.   Finally, the Settlement represents a significant percentage of estimated recoverable damages and was negotiated by counsel with extensive experience in securities class actions who intelligently evaluated the merits of Lead Plaintiff's claims, including the risks to recovery and likelihood of ultimate success.

Further confirming the fairness, reasonableness, and adequacy of the Settlement is the positive reaction, to date, of Class Members.   Pursuant to the Order Preliminarily Approving Settlement Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class [ECF No. 126] ("Preliminary Approval Order"), over 32,500 copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") were sent to potential Class Members and nominees, and notice was published in *The Wall Street Journal*.[3]   To date, not a single objection to the Settlement has been filed, and no requests for exclusion have been received.   *Id.*, ¶¶12-13.

Lead Plaintiff requests that the Settlement be approved because it represents a very favorable result and bears the hallmarks of a fully informed, negotiated resolution between experienced parties and counsel. The Settlement was reached only after hard-fought litigation and arm's-length negotiations between the parties – assisted by an experienced mediator, Ms. Yoshida.   The Settlement confers an immediate benefit to the Class and eliminates the risks involved in proving liability and damages as well as the further risk, delay, and expense of trial and appeal.   Lead Counsel has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class.

---

[3]     *See* Declaration of Eric A. Nordskog Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Nordskog Decl."), submitted herewith, ¶¶8-9.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how Settlement proceeds will be allocated among Authorized Claimants. It was prepared in consultation with Lead Counsel's in-house economics consultant and is based on the out-of-pocket measure of damages, *i.e.*, the difference between what Class Members paid for their Lexmark common stock during the Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed. The Plan of Allocation is fair, reasonable, and adequate, and should be approved.

Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This securities fraud class action alleges violations of the Securities Exchange Act of 1934 against Defendants on behalf of a class of purchasers of Lexmark publicly traded common stock from August 1, 2014 through July 20, 2015, inclusive. Lead Plaintiff alleges that Defendants made untrue statements of material fact and omitted material information which Defendants were required to disclose during the Class Period. More specifically, Lead Plaintiff alleges that Defendants failed to disclose that Lexmark's financial performance was benefitting from, and would ultimately suffer from, elevated laser supplies channel inventory levels in Lexmark's Europe, Middle East, and Asia ("EMEA") segment. *See* accompanying Declaration of Robert J. Robbins in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Robbins Decl." or "Robbins Declaration"). Defendants deny, and continue to deny, Lead Plaintiff's allegations of wrongdoing.

- 3 -

4841-3751-6750.v4

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Robbins Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Litigation, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement.  Robbins Decl., ¶¶17-48, 55-64.

## III.  LEAD PLAINTIFF PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

Rule 23 requires that the notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).  The standard for measuring the adequacy of a class action settlement notice is "reasonableness."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir. 2005).

The Court's Preliminary Approval Order found that the form and content of the notice program here, as well as the methods for notifying the Class proposed on preliminary approval, "satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rule 23(c)-(e)), the United States Constitution (including the Due Process Clause), Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as added by the [PSLRA], the Rules of this Court, and other applicable law."  Preliminary Approval Order, ¶10.

Pursuant to the Preliminary Approval Order, the Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), commenced mailing the Notice Packet on July 7, 2020.  *See* Nordskog Decl., ¶3.  As of October 27, 2020, more than 32,500 copies of the Notice Packet have been mailed.  *Id.*, ¶8.  A.B. Data also published the Summary Notice in *The Wall Street Journal* and over *PR Newswire* on July 13, 2020.  *Id.*, ¶9.  Additionally, A.B. Data posted the Notice Packet, as well as other important

documents, on the website maintained for the Settlement, www.LexmarkSecuritiesSettlement.com. *Id.*, ¶11.

This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication, transmission on a newswire, and providing a settlement website, is typical of notice plans in securities class actions and constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2018 WL 6333657, at *4 (S.D.N.Y. Dec. 4, 2018) (approving similar notice process in securities class action settlement).

## IV.    THE SETTLEMENT WARRANTS THIS COURT'S FINAL APPROVAL

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014); *see also In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.")[4]; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ("[T]he courts have long recognized that [complex class action] litigation is 'notably difficult and notoriously uncertain,' . . . and that compromise is particularly appropriate."). Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'" *Wal-Mart*, 396 F.3d at 116. Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a

---

[4]    Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

proposed settlement, it should also "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

Rule 23(e)(2), as amended, identifies the following factors to be considered by a district court at final approval:

> (2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors are to be considered alongside of, and largely overlap with, those set forth by the Second Circuit in *Grinnell*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *see also Virtus*, 2018 WL 6333657, at *2 (quoting *Grinnell* factors). "'[N]ot every factor must weigh in favor of settlement, rather the court should consider the totality of these factors

in light of the particular circumstances.'" *Id.* (alteration in original) (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016)).

For ease of reference, the Rule 23(e)(2) and Second Circuit *Grinnell* factors are summarized in the chart below and will be addressed together as follows:

| Rule 23(e)(2) | *Grinnell* |
|---|---|
| 23(e)(2)(A): the class representatives and class counsel adequately represented the class. | Factor 3: the stage of proceedings and amount of discovery completed. |
| 23(e)(2)(B): the settlement was negotiated at arm's length. | |
| 23(e)(2)(C)(i): relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal. | Factor 1: the complexity, expense, and likely duration of the litigation; Factor 4: risks to liability; Factor 5: risks to damages; Factor 6: risks to maintaining a class action through trial; Factor 7: ability of defendants to withstand a greater judgment; Factor 8: range of reasonableness in light of the best possible recovery; and Factor 9: range of reasonableness to a possible recovery in light of all risks. |
| 23(e)(2)(C)(ii): relief provided for the class is adequate, taking into account the effectiveness of the method of distributing relief to the class. | |
| 23(e)(2)(C)(iii): relief provided for the class is adequate, taking into account the terms of the requested attorneys' fees including timing of payment. | |
| 23(e)(2)(C)(iv): relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(3). | |
| 23(e)(2)(D): the settlement treats class members equitably. | Factor 2: the reaction of the class. |

Overall, just as they supported preliminary approval, an examination of all these factors favors final approval.

- 7 -

A.    **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

The first factor of Rule 23(e)(2) considers the adequacy of representation for the Class.  *See* Fed. R. Civ. P. 23(e)(2)(A).  This factor dovetails into the third *Grinnell* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *See In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'") (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012)).  "To satisfy this factor, [the] parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ.-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting discovery cannot begin in cases brought under the PSLRA until the motion to dismiss is denied); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[T]he Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal of the Settlement.'"), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Lead Counsel is highly skilled and possesses substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country.  *See* accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u 4(a)(4) ("Fee Brief"), §III.E.4; Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. F (firm resume), submitted herewith.

- 8 -

"Indeed, courts within this Circuit have repeatedly found Robbins Geller to be adequate and well-qualified for the purposes of litigating class action lawsuits." *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 157-58 (S.D.N.Y. 2012) ("'[g]iven [Robbins Geller's] substantial experience in securities class action litigation . . . the element of adequacy has also been satisfied'") (alterations in original); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135 (S.D.N.Y. 2014) ("The Court finds that Robbins Geller, the firm acting as counsel to Plaintiffs, is experienced in securities class action litigation and qualified to conduct this lawsuit" and "Robbins Geller has previously been deemed qualified in similar litigation."). Lead Counsel also worked collaboratively with additional counsel, Labaton Sucharow LLP, which also has extensive experience litigating securities class actions. *See* Declaration of Christine M. Fox Filed on Behalf of Labaton Sucharow LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. E (firm resume), submitted herewith. In addition, District No. 9, an institutional investor with a sizeable stake in the outcome of the Litigation, is likewise adequate to lead this class action as the Court found at the inception of the Litigation. ECF No. 28 at 4 (appointing Lead Plaintiff and Lead Counsel to represent the Class and noting that Robbins Geller Rudman & Dowd LLP ("Robbins Geller") is "experienced and competent").

Proving their adequacy, Lead Plaintiff and Lead Counsel have diligently prosecuted this case on behalf of the Class. Lead Plaintiff and Lead Counsel's efforts have included, but were not limited to, conducting an extensive factual investigation, drafting detailed complaints, opposing and defeating Defendants' motion to dismiss with thorough legal research, briefing and oral argument,

searching for and producing Lead Plaintiff's documents, obtaining and analyzing more than 55,000 pages of documents produced by Defendants and third parties, preparing the motion and memorandum for class certification supported by an expert declaration, and engaging in a contentious negotiation process that included a lengthy mediation statement, an in-person mediation, and subsequent settlement discussions aided by the mediator. *See* Robbins Decl., ¶¶42-48.

Thus, Lead Plaintiff and Lead Counsel have adequately represented the Class under Rule 23(e)(2)(A). In satisfaction of the third *Grinnell* factor, the case was sufficiently litigated and Lead Counsel had completed sufficient investigation and discovery to have "developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014) (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004)), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### B. The Settlement Negotiations Were Conducted at Arm's Length and with an Experienced Mediator

The second factor of Rule 23(e)(2), whether the Settlement was negotiated at arm's length (*see* Fed. R. Civ. P. 23(e)(2)(B)), is easily satisfied. Lead Plaintiff filed a detailed second amended complaint ("SAC") and opposed Defendants' vigorous attempt to dismiss this Litigation. Robbins Decl., ¶¶25-32. At no point did Defendants concede that a single aspect of Lead Plaintiff's claims was meritorious. In addition, the parties negotiated the Settlement under the supervision of an experienced mediator. *Id.* The mediation process provides compelling evidence that the Settlement is not the product of collusion between the parties. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08 Civ. 5310 (DAB), 2019 U.S. Dist. LEXIS 39807, at *6 (S.D.N.Y. Mar. 8,

- 10 -

2019) (the parties' participation in mediation is evidence of arm's-length negotiations); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 189 (S.D.N.Y. 2005) (finding use of experienced mediator supports fairness); *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2018 U.S. Dist. LEXIS 174513, at *10-*11 (E.D.N.Y. Oct. 9, 2018) (same).  In fact, the parties were unable to reach a compromise at mediation, and only reached a settlement after follow-up discussions with Ms. Yoshida several months later which culminated in the mediator proposing a settlement that was ultimately accepted by all parties.  Robbins Decl., ¶¶46-48.  Thus, Lead Plaintiff has established that the Settlement was negotiated at arm's length.

A strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and experienced counsel.  *See Wal-Mart*, 396 F.3d at 116 ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.").  Additionally, where, as here, a settlement is reached "'under the supervision and with the endorsement of a sophisticated institutional investor . . . [it] is entitled to an even greater presumption of reasonableness.'"  *Hi-Crush Partners*, 2014 WL 7323417, at *5.  Given that the Settlement "was the product of arm's length negotiations between experienced counsel and created under the supervision and endorsement of a sophisticated investor and counsel," as well as the supervision of an experienced mediator, the Settlement "is procedurally fair" and satisfies Rule 23(e)(2)(B).  *Virtus*, 2018 WL 6333657, at *1.

## C. The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal

The third factor of Rule 23(e)(2), which overlaps with several *Grinnell* factors (*i.e.*, factors 1, 4-9), instructs courts to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  The issues considered within this factor also weigh in favor of final approval, as the relief is adequate

- 11 -

considering the costs, risks, and delay of continued litigation, which would require Lead Plaintiff to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at summary judgment, trial, and on appeal.

### 1.     Risks of Establishing Liability and Damages

Securities class actions present numerous hurdles for plaintiffs to meet, and these risks weigh in favor of final settlement approval.   "'In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.'" *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *In re FLAG Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same).   This case is no exception.

For example, to prove its case at trial, Lead Plaintiff would need to prove that Defendants misrepresented Lexmark's financial performance, specifically its laser printer supplies channel inventory in EMEA and whether the channel inventory levels were poised to negatively impact the Company.   *See, e.g.*, SAC, ¶12.   Lead Plaintiff also alleges that Defendants knew that channel inventory levels had outpaced demand and would need to be drawn down, which would adversely impact the Company's financial performance.   *Id.*, ¶16.   Defendants, however, have strenuously asserted throughout this Litigation that they made no false or misleading statements regarding the nature of Lexmark's channel inventory or demand levels and further that they had no duty to disclose any additional information regarding any elevation in Lexmark's EMEA laser supplies channel inventory levels because worldwide channel inventory levels were not elevated.   Defendants also argued that even assuming, *arguendo*, that any of their statements were found to be false, that they lacked scienter.

Defendants were poised to vigorously contest loss causation and damages, and undoubtedly would have argued that Lead Plaintiff's damages methodology is unreliable and does not accurately account for the effect that confounding factors or market effects had on the price of Lexmark stock. Defendants no doubt would have further argued that damages, if any, are zero or significantly less than Lead Plaintiff's estimates, pointing to disclosed business risks, or they might have argued that (if the Class could be certified at all) the Class Period should be significantly shortened. Ultimately, each side would rely on expert testimony to present its loss causation arguments and damages estimates to a jury at trial. In the resulting "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Virtus*, 2018 WL 6333657, at *2 (recognizing that in "'any complicated securities action, the class face[s] the very real risk that a jury could be swayed by experts . . . who could minimize or eliminate the amount of Plaintiffs' losses'") (ellipses in original).

Prevailing upon these contested issues of liability and damages would subject the Class to considerable risk through class certification, summary judgment, trial, and the inevitable appeals. If not for this Settlement, the Litigation would have continued for a significant length of time, which time would also be adversely impacted by the ongoing COVID-19 pandemic. The $12 million Settlement is a very good result, providing an immediate recovery that eliminates the substantial expense, risk, and delay of advancing the Litigation through such a costly, lengthy, and uncertain battle. *Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also Strougo ex rel. Braz. Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a

- 13 -

shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

### 2.       The Risks of Maintaining the Class Action Through Trial

At the time of Settlement, Lead Plaintiff had moved for class certification, but the time for Defendants to oppose Lead Plaintiff's motion had not yet passed.  The fact that the Class was not yet certified presented yet another risk to Lead Plaintiff and the proposed Class.  For example, Defendants were likely to argue that Lead Plaintiff could not prove price impact and that if the Class could be certified at all, the Class Period should be significantly shortened.  These arguments would necessarily involve expert testimony.  And, even assuming the Class was certified, the Court could have revisited certification at any time and, if at all possible, Defendants were sure to move to decertify the Class before trial or on appeal.  This presented a potential risk that the case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weight in favor of final approval.

### 3.       Defendants' Ability to Withstand a Greater Judgment

Courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  While Defendants here are able to withstand a judgment in excess of the Settlement Amount, a potential source of recovery from Defendants (their liability insurance

- 14 -

policy) was diminishing through the course of the Litigation.  Indeed, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also IMAX*, 283 F.R.D. at 191 ("[A] defendant is not required to empty its coffers before a settlement can be found adequate."); *Virtus*, 2018 WL 6333657, at *3 (defendants' ability to "'withstand greater judgment does not alone suggest the settlement is unfair or unreasonable'") (quoting *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015)).

### 4. The Settlement Falls Within the Range of Reasonableness in Light of the Best Possible Recovery and Risks of Litigation

The adequacy of the Settlement Amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119.  Thus, the Settlement needs to fall within a "range of reasonableness," which is one that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *PaineWebber*, 171 F.R.D. at 131; *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

The $12 million Settlement Amount is a substantial recovery for the Class.  As described in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of

Settlement (ECF No. 120 at 19), the Settlement represents approximately 10% to 38% of estimated recoverable damages.  It is approximately 10% of $116.8 million, which is Lead Plaintiff's estimated damages consistent with the Plan of Allocation, and as much as 38% of reasonably recoverable damages of $31.5 million if the Court were to credit Defendants' anticipated attempts to reduce the length of the Class Period by moving the start date from August 1, 2014 to June 16, 2015 (through July 20, 2015).[5]  Under any of these scenarios and ranges, the Settlement falls well within the range of reasonableness previously approved by this and other courts in this District and supports final approval.  *See, e.g.*, *Virtus*, 2018 WL 6333657, at *3 (granting final approval to settlement that was 8% of estimated maximum recoverable damages) (citing *Bear Stearns*, 909 F. Supp. 2d at 269 (approving settlement of 11% of estimated damages)); *In re Canadian Superior Sec. Litig.*, No. 09 Civ. 10087(SAS), 2011 WL 5830110, at *4 (S.D.N.Y. Nov. 16, 2011) (approving settlement worth 8.5% of maximum estimated damages); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving settlement worth approximately 3.5% of total estimated damages).  These percentages are many multiples of the 2.1% median percentage recovery to investor losses in securities class actions in 2019.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: *2019 Full-Year Review*, NERA Economic Consulting at 20, fig. 13 (Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_Trends_012120_Final.pdf.

Accordingly, the Rule 23(e)(2)(C)(i) factor and the corresponding *Grinnell* factors weigh in favor of final approval of the Settlement.

---

[5]     Alternatively, if Defendants had successfully trimmed the Class Period by moving the start date from August 1, 2014 to April 28, 2015 (through July 20, 2015), as they were also likely to argue, the Settlement would represent 25% of estimated recoverable damages of $48.2 million.

### D.     The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors under Rule 23(e)(2) advise courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors are also readily met.

### 1.     The Proposed Method for Distributing Relief Is Effective

As discussed below and in the Nordskog Declaration, the method of the notice and claims administration process has been effective and provides Class Members with the necessary information to receive their *pro rata* share of the Settlement.  The Notice and claims processes are similar to that commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided.

### 2.     Attorneys' Fees and Expenses Are Reasonable

As set forth in the accompanying Fee Brief, Lead Counsel requests an award of attorneys' fees of 25% of the Settlement Amount, which is at or below the percentages awarded in similar cases and is reasonable and appropriate under the circumstances here.  Moreover, it was fully disclosed in the Notice and, to date, there have been no objections from Class Members.  Further, since this is an all-cash, non-reversionary settlement and the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible to do so, there is no risk that Plaintiffs' Counsel will be paid but Class Members will not.  *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

With respect to the timing of payment, Lead Counsel respectfully requests that the attorneys' fees be paid from the CRIS account once 75% of the Net Settlement Fund has been distributed consistent with this Court's rulings in other matters.  *E.g.*, *Virtus*, 2018 WL 6333657, at *5; *Pennsylvania Public School Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016).

### 3.     The Parties Have No Other Agreements Besides a Standard Agreement Regarding Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement required to be disclosed under Rule 23(e)(3).  As discussed in moving for preliminary approval, the parties have entered into a standard supplemental agreement which provides that in the event Class Members with Class Period purchases of Lexmark common stock that exceed a certain percentage of all Lexmark shares purchased during the Class Period validly request exclusion from the Class, Lexmark shall have the option to terminate the Settlement.

### 4.     Class Members Are Treated Equitably and the Reaction of the Class Supports Final Approval

Rule 23(e)(2)(D) looks at whether Class Members are treated equitably.  Here, Class Members are treated equitably under the terms of the Stipulation, including the Plan of Allocation set forth in the Notice.  The Plan of Allocation is discussed below at §V and provides that each Class Member that properly submits a valid Proof of Claim and Release form will receive his, her or its *pro rata* share of the Net Settlement Fund.

Related to this Rule 23(e)(2)(D) factor, the final *Grinnell* factor considers the reaction of the Class in connection with final approval.  It "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007); *see also FLAG Telecom*, 2010 WL 4537550, at *16.  "And 'the absence of objections by the class is extraordinarily positive and weighs

- 18 -

in favor of settlement[]'" and may itself be taken as evidencing the fairness of a settlement. *Virtus*, 2018 WL 6333657, at *2; *City of Providence*, 2014 WL 1883494, at *5 (absence of objections evidences the fairness of a settlement).

The reaction of the Class to date has been overwhelmingly positive.  While 32,516 Notice Packets have been mailed and the Summary Notice has been published, no objections or opt outs have been received.  Nordskog Decl., ¶¶12-13.  The positive reaction of the Class supports approval of the Settlement.  *Virtus*, 2018 WL 6333657, at *2 ("Here, no class members objected, which strongly favors approval.").

## V.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole.  Specifically, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "'[I]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.'" *Virtus*, 2018 WL 6333657, at *3 (alteration in original); *see also Advanced Battery*, 298 F.R.D. at 180 ("'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need only have a reasonable, rational basis.'").

The Plan of Allocation, which is set forth in the Notice, was prepared by Lead Counsel and is based on the same methodology underlying Lead Plaintiff's damages – the amount of artificial inflation in the price of Lexmark common stock during the Class Period.  It is a fair method to apportion the Net Settlement Fund among Authorized Claimants based on, and consistent with, the claims alleged.  Robbins Decl., ¶¶65-67.

The Net Settlement Fund will be equitably distributed to Authorized Claimants, *i.e.*, Class Members who submit timely and valid Proofs of Claim and Release that are approved for payment

- 19 -

from the Net Settlement Fund.  The Plan of Allocation treats all Class Members in a similar manner: everyone who submits a valid and timely Proof of Claim and Release form, and does not exclude himself/herself/itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.

Lead Counsel believes the Plan of Allocation is fair and reasonable and respectfully submits that it should be approved by the Court.  *Virtus*, 2018 WL 6333657, at *3 ("Because the Plan of Allocation appears fair and adequate and comes by the recommendation of experienced Class Counsel, it is approved.").  Notably, there have been no objections to the Plan of Allocation, which also supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7.

## VI.    CERTIFICATION OF THE CLASS REMAINS WARRANTED

In presenting the Settlement to the Court for preliminary approval, Lead Plaintiff requested that the Court certify the Class for purposes of settlement only so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proof of Claim and Release forms, could be issued.  In granting preliminary approval, the Court found that Lead Plaintiff had met the requirements for class certification set forth in Rules 23(a) and 23(b)(3) for purposes of settlement.  By its Preliminary Approval Order, the Court preliminarily certified the following Class:

> [A]ll Persons and entities who purchased or otherwise acquired Lexmark common shares from August 1, 2014 to July 20, 2015, inclusive, and were damaged thereby. Excluded from the Class are: Defendants, the officers and directors of Lexmark at all relevant times, members of their immediate families, any entity in which any Defendant owns a greater than 50% equity interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.

*See* Preliminary Approval Order, ¶2.  The Court also excluded from the Class "those Class Members who timely and validly request exclusion from the Class pursuant to the requirements described

- 20 -

below and in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") to be sent to Class Members pursuant to this Order." *Id.*, ¶3.

Nothing has changed since the Court issued its Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class and, for all the reasons stated in Lead Plaintiff's motion for preliminary approval and supporting declarations, incorporated herein by reference [ECF Nos. 119-123], Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify, for settlement purposes, the Class and appoint Lead Plaintiff as Class Representative for the Class and Lead Counsel as Class Counsel.

## VII.    CONCLUSION

The Settlement represents a substantial recovery for the Class. For the foregoing reasons, Lead Plaintiff respectfully requests that this Court enter the proposed Final Judgment and Order of Dismissal with Prejudice, approving the Settlement. Lead Plaintiff also requests that the Court enter an order approving the Plan of Allocation, which will govern distribution of the Net Settlement Fund.

DATED:  October 28, 2020              Respectfully submitted,

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     SAMUEL H. RUDMAN
                                     DAVID A. ROSENFELD


                                              s/David A. Rosenfeld
                                     _____
                                          DAVID A. ROSENFELD

                                     58 South Service Road, Suite 200
                                     Melville, NY  11747
                                     Telephone:  631/367-7100
                                     631/367-1173 (fax)
                                     srudman@rgrdlaw.com
                                     drosenfeld@rgrdlaw.com

- 21 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
ROBERT J. ROBBINS
MAUREEN E. MUELLER
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
mmueller@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Plaintiff*

LABATON SUCHAROW, LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel*

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I David A. Rosenfeld, hereby certify that on October 28, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ David A. Rosenfeld
DAVID A. ROSENFELD