UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

OKLAHOMA FIREFIGHTERS PENSION
AND RETIREMENT SYSTEM, Individually
and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

LEXMARK INTERNATIONAL, INC.,
PAUL A. ROOKE, DAVID REEDER and
GARY STROMQUIST,

Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:17-cv-05543-WHP

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT
OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND
EXPENSES AND AN AWARD TO LEAD
PLAINTIFF PURSUANT TO 15 U.S.C.
§78u-4(a)(4)

4841-0579-5278.v3

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................1

II.  HISTORY AND BACKGROUND OF THE LITIGATION..............................3

III.  ARGUMENT ..................................................................................................3

    A.  Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund.......................................................................3

    B.  The Court Should Award a Reasonable Percentage of the Common Fund............5

    C.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method..................................................................................7

    D.  The Fee Request Is Reasonable Under the Lodestar Method ................................8

    E.  The Relevant Factors Confirm that the Requested Fee Is Reasonable .................10

        1.  The Time and Labor Expended by Counsel ...............................................10

        2.  The Risks of the Litigation .......................................................................12

            a.  The Contingent Nature of Lead Counsel's Representation Supports the Requested Fee .........................................................12

            b.  Risks of Establishing Liability........................................................14

            c.  Risks of Establishing Causation and Damages.............................15

        3.  The Magnitude and Complexity of the Litigation .....................................15

        4.  The Quality of Representation Supports the Requested Fee .....................16

        5.  Public Policy Considerations ...................................................................17

        6.  The Class' Reaction to the Fee Request to Date Supports the Requested Fee ..............................................................................18

IV.  LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION................................19

V.  LEAD PLAINTIFF SHOULD BE AWARDED A REASONABLE AMOUNT BASED ON THE TIME IT SPENT ON BEHALF OF THE CLASS .............................20

VI.  CONCLUSION................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...................................................................................14

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 1:09-cv-00118 (VM), slip op.
  (S.D.N.Y. May 6, 2016).................................................................................................7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)......................................................................................................4

*Blum v. Stenson*,
  465 U.S. 886 (1984)...................................................................................................5, 7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)......................................................................................................3

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ...............................................................................15

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  No. 1:12-cv-01203-VEC, 2015 WL 13639234
  (S.D.N.Y. Oct. 15, 2015) .........................................................................................7, 20

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .............................................................................4, 6, 16

*Cornwell v. Credit Suisse Grp.*,
  No. 1:08-cv-03758-VM, slip op.
  (S.D.N.Y. July 20, 2011) ..............................................................................................9

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) .......................................................................5, 9

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................12

*Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*,
  925 F.3d 63 (2d Cir. 2019),
  *cert. denied*, __ U.S. __, 140 S. Ct. 385 (2019).........................................................6

4841-0579-5278.v3

Page

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................ *passim*

*Gormley v. Magicjack Vocaltec Ltd.*,
    No. 1:16-cv-01869-VM, slip op.
    (S.D.N.Y. Jan. 19, 2018) ................................................................................. 7, 20

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901
    (S.D.N.Y. Dec. 18, 2019) .......................................................................... 14, 17, 18

*Hayes v. Harmony Gold Mining Co., Ltd.*,
    509 F. App'x 21 (2d Cir. 2013) ................................................................................. 5

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ................................................................................ 4, 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ................................................................................ 13

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 6, 12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04 Civ. 8141 (DAB), 2010 WL 5060697
    (S.D.N.Y. Dec. 2, 2010),
    *aff'd*, 452 F. App'x 75 (2d Cir. 2012) ................................................................... 21

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 2006 WL 903236
    (S.D.N.Y. Apr. 6, 2006) ................................................................................... 16

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ................................................................................ 9

*In re Bayer AG Sec. Litig.*,
    No. 03 Civ. 1546 (WHP), 2008 WL 5336691
    (S.D.N.Y. Dec. 15, 2008) ................................................................................ 15

*In re BHP Billiton Ltd. Sec. Litig.*,
    No. 1:16-cv-01445-NRB, 2019 WL 1577313
    (S.D.N.Y. Apr. 10, 2019) ................................................................................ 7, 9

**Page**

*In re BISYS Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726
   (S.D.N.Y. July 16, 2007) ...................................................................................9, 16

*In re China Media Express Holdings, Inc.*,
   No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933
   (S.D.N.Y. Sept. 18, 2015) .........................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354
   (E.D.N.Y. June 24, 2010) ......................................................................................9, 12

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................................12

*In re Facebook Inc., IPO Sec. and Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018),
   *aff'd*, 822 F. App'x 40 (2d Cir. 2020).....................................................................19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550
   (S.D.N.Y. Nov. 8, 2010) ................................................................................. *passim*

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................6, 19

*In re Ikon Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..............................................................................16

*In re Interpublic Sec. Litig.*,
   No. 02 Civ 6527 (DLC), 2004 WL 2397190
   (S.D.N.Y. Oct. 26, 2004) ...........................................................................................4

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C-02-1486 CW (EDL), 2007 WL 4788556
   (N.D. Cal. Nov. 27, 2007).........................................................................................14

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................14, 17

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008).......................................................................................2

- iv -

**Page**

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988-SI, 2009 WL 1709050
  (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) ......................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .....................................................................5

*In re Polaroid ERISA Litig.*,
  No. 03 Civ. 8335 (WHP), 2007 WL 2116398
  (S.D.N.Y. July 19, 2007) .................................................................................7, 20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) .........................................................................12

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................................18

*In re Sadia S.A. Sec. Litig.*,
  No. 08 Civ. 9528 (SAS), 2011 WL 6825235
  (S.D.N.Y. Dec. 28, 2011) .......................................................................................13

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................4, 9, 12

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 WL 4115808
  (S.D.N.Y. Nov. 7, 2007) ...........................................................................4, 6, 17, 21

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  No. 15cv1249, 2018 WL 6333657
  (S.D.N.Y. Dec. 4, 2018) ......................................................................7, 11, 19, 20

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964) .................................................................................................4

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................6, 9, 17

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .............................................................................................7, 8

- v -

**Page**

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  No. 1:08-cv-10783-LAP, 2016 WL 3369534
  (S.D.N.Y. May 2, 2016) ................................................................................9

*Pennsylvania Public School Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  318 F.R.D. 19 (S.D.N.Y. 2016) ...................................................................12

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...................................................................14

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999) .....................................................................3, 6

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814 (MP), 2004 WL 1087261
  (S.D.N.Y. May 14, 2004) .......................................................................12, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .....................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................5, 6, 9

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  No. 14-CV-8925 (KMW), 2017 WL 3579892
  (S.D.N.Y. Aug. 18, 2017) .......................................................................9, 17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4 ............................................................................................... *passim*
  §78u-4(a)(4) ..................................................................................1, 3, 20
  §78u-4(a)(6) ...............................................................................................6

**SECONDARY AUTHORITIES**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  *Federal Practice and Procedure* (3d ed. 2005)
  §1803 ............................................................................................................3

Lead Counsel submits this memorandum in support of its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff District No. 9, I.A. of M & A.W. Pension Trust ("District No. 9" or "Lead Plaintiff") pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

## I.  INTRODUCTION

After more than two years of hard-fought litigation, Lead Counsel has secured a $12,000,000 settlement for the benefit of the Class – a very good result, achieved in spite of serious obstacles to recovery, including the numerous defenses to liability and damages that Lexmark and the Individual Defendants have articulated and that the Court may have accepted at summary judgment or a jury may have accepted at trial.[1]  To obtain this Settlement, Lead Plaintiff and Lead Counsel overcame a number of significant challenges that existed from the filing of the initial complaint.  In recognition of these risks and the result obtained, Lead Counsel now respectfully moves this Court for an award of attorneys' fees of 25% of the Settlement Amount, and $201,358.78 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation, plus interest on both amounts.  In addition, Lead Plaintiff seeks an award in the amount of $2,500 for the time it spent representing the Class pursuant to 15 U.S.C. §78u-4(a)(4).  As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

---

[1]  Capitalized terms used herein are defined and have the meanings contained in the Stipulation and Agreement of Settlement (ECF No. 122) (the "Stipulation"), the accompanying Declaration of Robert J. Robbins in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Robbins Decl."), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

- 1 -

This fee request also has the full support of Lead Plaintiff.  *See* Declaration of Dave Weaver on Behalf of Lead Plaintiff District No. 9, I.A. of M & A.W. Pension Trust ("Weaver Decl."), ¶8, filed herewith.  This is significant as the Second Circuit has directed district courts to:

> give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.  In many cases, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis.

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008).  In addition, following an extensive Court-ordered notice program in which over 32,500 Notices were mailed to potential Class Members, to date not a single Class Member has objected to the requested fees or the expenses (not to exceed $300,000 as set forth in the Notice).[2]

As detailed herein, in the Robbins Declaration, and in the Settlement Memorandum, the $12 million Settlement is a very good result for the Class.  It is an immediate and certain recovery in a case that faced substantial obstacles in light of Defendants' various defenses.  In achieving this result, Plaintiffs' Counsel worked more than 4,500 hours over the course of more than two years on this complex litigation, all on a contingency basis, with no guarantee of ever being paid.

Lead Counsel believes that an attorneys' fee award of 25%, together with payment of its litigation expenses, properly reflects the many significant risks taken by Lead Counsel in prosecuting the Litigation, as well as the result achieved.  When examined under either of this

---

[2]   Pursuant to the Court's Preliminary Approval Order, copies of the Notice were mailed to potential Members of the Class and nominees, advising them that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement Amount, plus expenses of no greater than $300,000, plus interest on both amounts, and an award to Lead Plaintiff of no greater than $5,000.  *See* accompanying Declaration of Eric A. Nordskog Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Nordskog Decl.").  If any timely objections are received from Class Members, Lead Counsel will address them in its reply brief, which will be filed with the Court no later than December 9, 2020.

- 2 -

Circuit's methods of contingency fee determination (*i.e.*, percentage of the fund or lodestar), it is abundantly clear that an award of fees of 25% is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and expenses requested by Lead Counsel are reasonable in amount and were necessarily incurred.  Finally, Lead Plaintiff greatly contributed to the prosecution and settlement of the Litigation, and the Court should grant the request, pursuant to 15 U.S.C. §78u-4(a)(4), to award $2,500 to Lead Plaintiff for its efforts.

## II.      HISTORY AND BACKGROUND OF THE LITIGATION

A detailed description of Lead Plaintiff's claims and Lead Counsel's prosecution of this case (including key pleadings, discovery efforts, motions, and mediation efforts) is set forth in the accompanying Robbins Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.     ARGUMENT

### A.      Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchs. Bank*, 166 F.3d 456, 459-60 (2d Cir. 1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation

- 3 -

pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *Veeco*, 2007 WL 4115808, at *2.  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to this precedent.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'").  Fairly compensating Lead Counsel for the risks it took in prosecuting this Litigation is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

- 4 -

4841-0579-5278.v3

**B.      The Court Should Award a Reasonable Percentage of the Common
             Fund**

Lead Counsel respectfully submits that the Court should award a fee based on a percentage

of the common fund obtained.  Courts routinely find that the percentage-of-the-fund method, under

which counsel is awarded a percentage of the fund that they created, is the preferred means to

determine a fee because it "'directly aligns the interests of the class and its counsel and provides a

powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Wal-Mart

Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Hayes v. Harmony Gold

Mining Co., Ltd.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the

prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of

class counsel with those of the class.").  The percentage approach also recognizes that the quality

of counsel's services is measured best by the results achieved and is most consistent with the

system typically used in the marketplace to compensate attorneys in non-class contingency cases.[3]

The Supreme Court has indicated that attorneys' fees in common fund cases generally

should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)

("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund

bestowed on the class.").  The Second Circuit has expressly approved the percentage method,

recognizing that "the lodestar method proved vexing" and resulted in "an inevitable waste of

---

[3]      *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp.
2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs'
counsel with those of the class members because it bases the attorneys' fees on the results they
achieve for their clients, rather than on the number of motions they file, documents they review,
or hours they work. . . .   The percentage method also accords with the overwhelming prevalence
of contingency fees in the market for plaintiffs' counsel."); *Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that
it provides an incentive to attorneys to resolve the case efficiently and to create the largest common
fund out of which payments to the class can be made, and that it is consistent with the system
typically used by individual clients to compensate their attorneys").

judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Savoie*, 166 F.3d at 460 (stating that the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Indeed, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also City of Providence*, 2014 WL 1883494, at *11-*12.

Recently the Second Circuit reaffirmed these principles in rejecting an objection made to using the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Tr.*, 925 F.3d 63 (2d Cir. 2019) ("*Fresno*"), *cert. denied*, __ U.S. __, 140 S. Ct. 385 (2019). In *Fresno*, the Second Circuit reaffirmed that the percentage approach is appropriate to use in awarding attorneys' fees in these cases. *Id*. at 72.

The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 465-66 (S.D.N.Y. 2004).

Given the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger* and *Fresno*,

- 6 -

as well as the trend among the district courts in this Circuit and the language of the PSLRA, the Court should award Lead Counsel attorneys' fees based on a percentage of the fund.

### C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989).  If this were a non-class action, the customary fee arrangement would be contingent and in the range of 33% of the recovery.  *See Blum*, 465 U.S. at 903 ("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.'") (Brennan, J., concurring).

The requested 25% fee is well within, if not below, the range of percentage fees awarded by this Court and within the Second Circuit in other comparable securities and antitrust cases.  *See, e.g.*, *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15cv1249, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018) (awarding fees of $5.5 million (25%) on recovery of $22 million, plus expenses); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335 (WHP), 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (awarding fees of $4.2 million (28%) on recovery of $15 million, plus expenses); *see In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 30% on $50 million recovery, plus expenses); *Gormley v. Magicjack Vocaltec Ltd.*, No. 1:16-cv-01869-VM, slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (awarding fees of 33.33% on $3.61 million recovery, plus expenses); *Anwar v. Fairfield Greenwich Ltd.*, No. 1:09-cv-00118 (VM), slip op. at 11-12 (S.D.N.Y. May 6, 2016) (awarding fees of 30% of $55 million recovery, plus expenses); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding fees of 30%

- 7 -

on $33 million recovery, plus expenses); *In re China Media Express Holdings, Inc.*, No. 11-CV-0804 (VM), 2015 U.S. Dist. LEXIS 181933, at *6 (S.D.N.Y. Sept. 18, 2015) (awarding fees of 33.33% on $12 million recovery, plus expenses).[4]

### D.    The Fee Request Is Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50.  Performing the lodestar calculation here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel and their paraprofessionals have spent, in the aggregate, 4,581 hours in the prosecution of this case producing a total lodestar amount of $3,011,766.00. *See* accompanying Declaration of Robert J. Robbins Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶5 ("Robbins Geller Decl."); Declaration of Christine M. Fox Filed on Behalf of Labaton Sucharow LLP in Support of Application for Award of Attorneys' Fees and Expenses, ¶4 ("Labaton Decl.") (collectively, "Fee Declarations").  The amount of attorneys' fees requested by Lead Counsel herein, $3 million, represents a multiplier of slightly below 1.[5]

The requested multiplier of slightly below 1 in this Litigation is well within (if not below) the range of multipliers commonly awarded in securities class actions and other comparable litigation.  In cases of this nature, fees representing multiples above lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors.  *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010)

---

[4]    All unreported authorities are attached hereto as Exhibits A-C.

[5]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Jenkins*, 491 U.S. at 283-84.

("'a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors'"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Indeed, in complex contingent litigation, lodestar multipliers between two and five are commonly awarded. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Cornwell v. Credit Suisse Grp.*, No. 1:08-cv-03758-VM, slip op. at 4 (S.D.N.Y. July 20, 2011) (awarding fee representing a multiplier of 4.7); *BHP Billiton*, 2019 WL 1577313, at *1 (awarding fees representing a 2.7 multiplier); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (finding 3.14 lodestar multiplier "within the range of lodestar multipliers approved in this Circuit"); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (awarding 21% fee on $272 million settlement representing a 3.9 multiplier); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing multiplier of 5.3, which was "not atypical" in similar cases); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re BISYS Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding 30% fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186

F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

Plaintiffs' Counsel invested substantial time and effort prosecuting this Litigation against Defendants to a successful conclusion. The requested fee is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar. Moreover, as discussed below, each of the factors cited by the Second Circuit in *Goldberger* also strongly supports a finding that the requested fee is reasonable.

### E. The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the Court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors demonstrates that the requested fee is fair and reasonable.

### 1. The Time and Labor Expended by Counsel

Plaintiffs' Counsel have expended substantial time and effort pursuing the Litigation on behalf of the Class. Since the Litigation commenced in July 2017, Plaintiffs' Counsel and their paraprofessionals devoted in excess of 4,500 hours to prosecuting the Class' claims. As detailed in the Robbins Declaration, submitted herewith, Plaintiffs' Counsel, among other things:

- 10 -

- conducted an extensive factual investigation, including a face-to-face meeting with an investigative source in the United Kingdom;

- researched the law relevant to the claims asserted and Defendants' potential defenses thereto, and drafted the detailed amended complaint and second amended complaint;

- researched, briefed and argued Defendants' motion to dismiss;

- served discovery on Defendants and third parties and participated in numerous meet-and-confers regarding Defendants' and third parties' production of documents;

- reviewed and analyzed more than 55,000 pages of documents produced by Defendants and third parties;

- retained and worked extensively with their expert on issues regarding market efficiency, loss causation, and damages;

- filed Lead Plaintiff's motion for class certification;

- participated in lengthy arm's-length settlement negotiations and mediation with Defendants; and

- negotiated and drafted the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement.

*See* Robbins Decl., ¶¶9, 15-46.

Moreover, Lead Counsel, with the assistance of its in-house damages consultant, prepared the proposed Plan of Allocation based primarily on an analysis, obtained from their retained expert, estimating the amount of artificial inflation in the price of Lexmark common stock during the Class Period.  Throughout the Litigation, Lead Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort.  The significant amount of time and effort devoted to this case by Plaintiffs' Counsel to obtain a $12 million recovery, work that will not end with the Court's approval of the Settlement, confirms that the 25% fee request is reasonable.[6]

---

[6]   With respect to the timing of payment, Lead Counsel respectfully requests that the attorneys' fees be paid from the CRIS account once 75% of the Net Settlement Fund has been distributed consistent with this Court's rulings in other matters.  *E.g.*, *Virtus*, 2018 WL 6333657, at *5;

- 11 -

2.        **The Risks of the Litigation**

a.        **The Contingent Nature of Lead Counsel's**
**Representation Supports the Requested Fee**

The risk undertaken in the litigation is often considered the most important *Goldberger*

factor. *Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d

at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to
> charge, when successful, as little as he would charge a client who in advance had
> agreed to pay for his services, regardless of success. Nor, particularly in
> complicated cases producing large recoveries, is it just to make a fee depend solely
> on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free,

and class actions confront even more substantial risks than other forms of litigation." *Teachers'*

*Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y.

May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this

[contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential*

*Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have

recognized that the attorney's contingent fee risk is an important factor in determining the fee

award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment.

*See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee

award where court failed to account for, among other things, risk of underpayment to counsel).

When considering the reasonableness of attorneys' fees in a contingency action, the Court should

consider the risks of the litigation at the time the suit was brought. *See Goldberger*, 209 F.3d at

---

*Pennsylvania Public School Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y.
2016).

- 12 -

55; *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011).

Lead Counsel undertook this Litigation on a wholly-contingent fee basis, investing a substantial amount of time and money to prosecute a risky action with no guarantee of compensation or even the recovery of expenses.  Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began in July 2017, and would have received no compensation or payment of its expenses had this case not been resolved successfully.

From the outset, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require.  In undertaking that responsibility, Lead Counsel was obligated to assure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

In addition to advancing litigation expenses, Lead Counsel faced the possibility that it would receive no attorneys' fees at all.  It is wrong to presume that a law firm handling complex contingent litigation always wins.  There are numerous instances where, in contingent cases such as this one, plaintiff's counsel have expended thousands of hours without receiving any compensation.[7]  The risk of no recovery in complex cases of this type is heightened when lead counsel press to achieve the very best result for those they represent.

---

[7]    *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376

4841-0579-5278.v3

Losses in contingent-fee litigations, especially those brought under the PSLRA, are exceedingly expensive. Lead Counsel's assumption of the contingency fee risk strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *20 (S.D.N.Y. Dec. 18, 2019) ("In addition to advancing litigation expenses and paying their not insubstantial overhead required to provide the Class with the services of up-to-date modern law firms, Lead Counsel was mindful that in numerous cases, class counsel working on a contingent basis, such as this, have expended thousands of hours only to receive no compensation.").

### b. Risks of Establishing Liability

While Lead Plaintiff remains confident in its ability to prove its claims, it recognizes that its ability to prove liability was far from certain. Robbins Decl., ¶59. As detailed in the Robbins Declaration (¶¶55-59) and in the Settlement Memorandum (at §IV.C.1.), Defendants raised numerous challenges to the falsity of the alleged misstatements and omissions and to whether they

---

(9th Cir. 2010) (court granted summary judgment for defendants after eight years of litigation, after plaintiffs' counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 14 -

were made with scienter.  These arguments would no doubt have been raised again on summary judgment and at trial.  Therefore, whether Lead Plaintiff ultimately would prove liability under the Exchange Act was far from assured.

### c.    Risks of Establishing Causation and Damages

With respect to proving causation and damages, Defendants would continue to attack the causal link between Defendants' misstatements and Lead Plaintiff's losses as well as the damages calculations of Lead Plaintiff's expert, which, if accepted, would severely limit, or entirely eliminate, the amount of recoverable damages.  *Id.*, ¶61.  Defendants would never concede these points and would continue to press this defense at summary judgment and trial.

There is no way to know how a jury would decide these issues.  The damage assessments of the parties' respective trial experts would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### 3.    The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor bearing on the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that "shareholder actions are notoriously complex and difficult to prove."  *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008); *see also FLAG Telecom*, 2010 WL 4537550, at *27.  "[S]ecurities actions have become more difficult from a plaintiff's perspective

in the wake of the PSLRA." *In re Ikon Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").  This case was no exception.  As described herein and in the Robbins Declaration, this Litigation involved a number of difficult and complex questions concerning liability and damages that would have required extensive additional efforts by Lead Counsel and consultation with accounting and economic experts.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources.  Because this case revolved around "difficult, complex, hotly-disputed, and expert-intensive issues," this factor favors awarding a 25% fee.  *City of Providence*, 2014 WL 1883494, at *16.

### 4.    The Quality of Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel submits that the quality of the representation here is best evidenced by the quality of the result achieved.  *See, e.g.*, Settlement Memorandum at §IV.C.4 (recovering approximately 10% to 38% of estimated recoverable damages); *see also FLAG Telecom*, 2010 WL 4537550, at *28; *Bisys*, 2007 WL 2049726, at *3.  Here, Lead Counsel demonstrated a great deal of skill to achieve a settlement at this level in this particular case.  Lead Counsel are experienced securities class action and complex litigation practitioners.  This Settlement is attributable to the diligence, determination, hard work, and reputation of counsel,

who developed, litigated, and successfully negotiated the Settlement, a substantial immediate cash recovery in a very difficult case, without the risk of further litigation.  *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6.

Finally, courts repeatedly recognize that the quality of the opposition faced by plaintiff's counsel should also be taken into consideration in assessing the quality of counsel's performance. *See, e.g.*, *Marsh ERISA*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"). Here, Defendants are represented by lawyers from O'Melveny & Myers LLP, who presented a very skilled defense and spared no effort in representing their clients.  Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness to continue to vigorously prosecute the Litigation through trial and then inevitable appeals enabled Lead Counsel to achieve a very favorable Settlement for the benefit of the Class.

### 5.    Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See Salix*, 2017 WL 3579892, at *7 (fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Sillerman*, 2019 WL 6889901, at *21 ("As a practical matter, class actions

- 17 -

can be maintained only if competent counsel can be obtained to prosecute them. This will occur if courts award reasonable and adequate compensation for their services where successful results are achieved.").

Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 6.    The Class' Reaction to the Fee Request to Date Supports the Requested Fee

To date, the Claims Administrator has sent more than 32,500 copies of the Notice to potential Class Members and nominees informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount, plus expenses not to exceed $300,000, plus interest on both amounts, plus an award to Lead Plaintiff in an amount not to exceed $5,000.[8]  The time to object to the fee request expires on November 11, 2020.  To date, not a single objection to the fee and expense amounts set forth in the Notice has been received.  "The lack of objections, in this day and age, is not only remarkable, but militates in favor of approval of the Fees as requested."  *Sillerman*, 2019 WL 6889901, at *22.  Such a "low level of objection is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).  Moreover, "a significant number of investors in the class [are] 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive."  *Id.*

Additionally, Lead Plaintiff, charged by the Court and the PSLRA with responsibility for monitoring Lead Counsel, supports the fee request.  *See* Weaver Decl., ¶8.  Here, Lead Plaintiff

---

[8]    *See* Nordskog Decl., ¶8.

played an active role in the Litigation and closely supervised the work of Lead Counsel.  *See id*., ¶¶4-6.  Accordingly, Lead Plaintiff's endorsement of the fee request and the fact that no objections have been received to date both support the fairness of the fee request.

## IV. LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $201,358.78 in expenses incurred while prosecuting the Litigation.  Lead Counsel has submitted declarations regarding these expenses, which are properly recovered by counsel.  *See* Robbins Geller Decl., ¶¶6-7; Labaton Decl., ¶¶5-6.  *See, e.g*., *In re Facebook Inc., IPO Sec. and Derivative Litig.*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) ("'It is well-settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.'"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *Virtus*, 2018 WL 6333657, at *5 (same).

Counsel's expenses include, for example, the costs of hiring a damages expert, travel, mediating the Class' claims, and computerized research.  A complete breakdown by category of the expenses incurred is set forth in the Fee Declarations.  These expenses reflect "'the typical costs of complex litigation'" (*id.*) and were critical to Lead Plaintiff's success in achieving the Settlement.  *See Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").  So far, not a single objection to the expense amount set forth in the Notice has been received. Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

4841-0579-5278.v3

## V. LEAD PLAINTIFF SHOULD BE AWARDED A REASONABLE AMOUNT BASED ON THE TIME IT SPENT ON BEHALF OF THE CLASS

Lead Plaintiff District No. 9 seeks approval for an award of $2,500 for the time it spent representing the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

Lead Plaintiff dedicated time to the Litigation by reviewing significant pleadings, briefs, and certain correspondence in the Litigation and monitoring the progress of settlement negotiations. *See* Weaver Decl., ¶9. In addition, Lead Plaintiff filed the initial complaint and stepped forward to serve as the lead plaintiff. *See* Robbins Decl., ¶¶18-20. Thus, without Lead Plaintiff's efforts, no recovery would have occurred for the benefit of the Class.

Numerous courts, including this Court, have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. *See Virtus*, 2018 WL 6333657, at *5 (awarding lead plaintiff award of $5,648.73 under 15 U.S.C. §78u-4(a)(4)); *Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (awarding class representatives $10,000 each); *see also Gormley*, slip op. at 1 (awarding $5,000 each to two individual investor lead plaintiffs); *Kinross Gold*, 2015 WL 13639234, at *4 (awarding $16,800.11 to lead plaintiff and additional named plaintiffs "to compensate them for their reasonable costs and expenses directly relating to their representation of the Class"); *Hicks*, 2005 WL 2757792, at *10 ("Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

Lead Plaintiff took an active role with the prosecution of the Litigation. Weaver Decl., ¶5. This is precisely the type of activity that courts have found support awards to class representatives.

*See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (granting PSLRA award of $30,000 to lead plaintiffs "to compensate them for the time and effort they devoted on behalf of a class"), *aff'd*, 452 F. App'x 75 (2d Cir. 2012); *FLAG Telecom*, 2010 WL 4537550, at *31 (approving award of $100,000 to lead plaintiff for time spent in the litigation); *Veeco*, 2007 WL 4115808, at *12 (characterizing such awards as "routine[]" in this Circuit).

The Notice sufficiently informed potential Class Members that such expenses would be sought.  Nordskog Decl., Ex. A (Notice) at 3.  The request by Lead Plaintiff is supported by a declaration, is reasonable and fully justified under the PSLRA, and should be granted.  To date, there have been no objections to this request.

## VI.  CONCLUSION

Based on the foregoing, and the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Amount, plus expenses in the amount of $201,358.78, plus interest on both amounts, and $2,500 to Lead Plaintiff District No. 9 for its time representing the Class.

DATED:  October 28, 2020              Respectfully submitted,

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     SAMUEL H. RUDMAN
                                     DAVID A. ROSENFELD


                                            s/David A. Rosenfeld
                                     ———————————————————————
                                          DAVID A. ROSENFELD

                                     58 South Service Road, Suite 200
                                     Melville, NY  11747
                                     Telephone:  631/367-7100
                                     631/367-1173 (fax)
                                     srudman@rgrdlaw.com
                                     drosenfeld@rgrdlaw.com

- 21 -

4841-0579-5278.v3

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
ROBERT J. ROBBINS
MAUREEN E. MUELLER
BAILIE L. HEIKKINEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
rrobbins@rgrdlaw.com
mmueller@rgrdlaw.com
bheikkinen@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Plaintiff*

LABATON SUCHAROW, LLP
JONATHAN GARDNER
CHRISTINE M. FOX
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel*

- 22 -

<u>CERTIFICATE OF SERVICE</u>

I David A. Rosenfeld, hereby certify that on October 28, 2020, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ David A. Rosenfeld
_____
DAVID A. ROSENFELD